**John Wiley PRICE, Appellant,**

v.

**Timmy Don SHORT, Appellee.**

**No. 05–95–00555–CV.**

Court of Appeals of Texas, Dallas.

Aug. 30, 1996.

Cheryl B. Wattley, Dallas, for appellant.

Robert C. Hinton, Jr., McKinley, Hinton & Ringer, L.L.P., Dallas, for appellee.

Before LAGARDE, MORRIS and WHITTINGTON, JJ.

## OPINION

LAGARDE, Justice.

John Wiley Price appeals the judgment on a jury's verdict rendering him individually liable to Timmy Don Short for $113,838.01. In the first five of six points of error, appellant contends that the trial court erred in: (a) denying in part appellant's *Edmonson*[1] motion; (b) granting in part appellee's *Edmonson* motion; (c) denying appellant's motion for leave to file amended pleading; and (d) refusing appellant's requested jury instructions on battery and self-defense. In his sixth point of error, appellant contends that the evidence is insufficient to support the jury's award of damages. We overrule the points and affirm the trial court's judgment.

## FACTUAL BACKGROUND

On August 2, 1991, appellee was part of a film crew that was working outside the Dallas County Administration Building, formerly the Texas School Book Depository Building, on the film "Ruby." A piece of styrofoam extended into the street in front of the building. Appellant, who is a Dallas County Commissioner, was driving down that street when he had to stop suddenly to avoid hitting the styrofoam. Appellant parked his van and approached the film crew shouting profanity about the styrofoam. Appellant and appellee became embroiled in a physical altercation during which appellant placed appellee in a headlock. Appellee's ankle was pressed against the curb. During the struggle, appellant applied so much pressure to appellee's leg that the ankle broke.

## JURY SELECTION

In his first point of error, appellant contends that the trial court erred in overruling his objections to three of appellee's peremptory strikes because the strikes were exercised in a racially discriminatory manner. In *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), the Supreme Court held that the reasoning of *Batson v. Kentucky* and its progeny in criminal cases prohibiting the exercise of peremptory strikes for racial purposes applies in civil cases. *Edmonson*, 500 U.S. at 631, 111 S.Ct. at 2088–89; *see Powers v. Palacios*, 813 S.W.2d 489, 491 (Tex.1991); *see generally Purkett v. Elem*, — U.S. —, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam); *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

■ To invoke the protection of *Edmonson*, a party must raise an inference of purposeful discrimination, and the trial court must determine that a prima facie case of discrimination exists by virtue of the striking party's use of its peremptory strikes. A party establishes a prima facie case of discrimination by showing facts and any relevant circumstances that raise an inference that the striking party used peremptory strikes to exclude veniremembers on account of their race. *See Powers*, 499 U.S. at 409, 111 S.Ct. at 1369–70; *Batson*, 476 U.S. at 96, 106 S.Ct. at 1722–23; *Mead v. State*, 819 S.W.2d 869, 870 (Tex.Crim.App.1991); *Keeton v. State*, 724 S.W.2d 58, 65 (Tex.Crim. App.1987). When a party establishes a prima facie case, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation. *Purkett*, — U.S. at —, 115 S.Ct. at 1770; *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723; *Keeton*, 724 S.W.2d at 65. The explanation must be race neutral; it need not be persuasive or even plausible. *Purkett*, — U.S. at —, 115 S.Ct. at 1771. If a race-neutral explanation is tendered, the complaining party may offer evidence showing that the explanation is a sham or pretext for discrimination. The trial court must then decide whether the opponent of the strike has proved racial discrimination. *Purkett*, — U.S. at — — —, 115 S.Ct. at 1770–71.

1. *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).

■ On appeal, the trial court's decision on the issue of discriminatory intent is given great deference because a determination of the issue of purposeful discrimination depends on assessing the credibility and the content of the striking party's explanation and all other relevant facts and circumstances. *Alexander v. State,* 866 S.W.2d 1, 8 (Tex.Crim.App.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1869, 128 L.Ed.2d 490 (1994). The reviewing court will not disturb the trial court's decision unless it is clearly erroneous. *Hernandez v. New York,* 500 U.S. 352, 369, 111 S.Ct. 1859, 1871–72, 114 L.Ed.2d 395 (1991); *Whitsey v. State,* 796 S.W.2d 707, 727 (Tex.Crim.App.1989) (op. on reh'g). In other words, a reviewing court must not reverse a trial court's *Edmonson* decision unless the reviewing court is left with a firm conviction that a mistake has been committed. *Harris v. State,* 827 S.W.2d 949, 955 (Tex.Crim. App.), *cert. denied,* 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992); *Whitsey,* 796 S.W.2d at 721. If the trial court determines that the prosecution used peremptory strikes in a racially discriminatory manner, the court may dismiss the array and summon a new one, Tex.Code Crim. Proc. Ann. art. 35.261 (Vernon 1989), or it "may fashion a remedy in its discretion consistent with *Batson* and its progeny." *State ex rel. Curry v. Bowman,* 885 S.W.2d 421, 425 (Tex.Crim.App. 1993) (trial court has discretion to place wrongfully struck veniremembers on jury panel instead of dismissing venire), *cert. denied,* — U.S. ——, 115 S.Ct. 184, 130 L.Ed.2d 118 (1994).

Both appellant and appellee filed *Edmonson* motions in this case. Appellant, who is black, complained of appellee's using all six peremptory strikes on black veniremembers. Appellee, who is white, complained of appellant's using all six peremptory strikes on white veniremembers. After hearing each side's explanation for its respective six peremptory strikes, the trial court sustained appellant's *Edmonson* motion on four of appellee's peremptory strikes and sustained appellee's *Edmonson* motion on two of appellant's peremptory strikes. The trial court ordered four of the six improperly struck veniremembers placed on the jury.[2]

### Appellee's Peremptory Strikes

In his first point of error, appellant contends that the trial court erred in overruling his *Edmonson* motion as to two of the veniremembers. Appellee's reason for striking veniremember five, Cassandra Boston, was as follows:

Now, [she] sat there for 45 minutes and sneered at at [sic] me, and I don't think it was bad gas. I don't think she cared for our side.

She appeared very much to care for the defendant's side. It didn't appear to me that it would be prudent under the circumstances regardless of what the color of her skin was to leave her on this jury if I expected to win. Therefore I chose to exercise our second peremptory challenge on No. 5.

Appellee's reason for striking veniremember eighteen, Oretha Peppers, was as follows:

Now, I had visual contact with Ms. Peppers on several occasions, and I saw that she had visual contact with either Mr. Price or somebody over there at the defense table. It appeared to me right away that I wasn't going to get anywhere with that juror.

I have a little note here that says that she's mean. She appeared to me to be extremely mean to my side, so I decided on that ground to exercise a peremptory challenge.

After appellee explained his peremptory strikes, the trial court offered him the chance to make his own *Edmonson* motion against appellant, which appellee did. The trial court then asked appellant to respond to appellee's *Edmonson* motion before responding to appellee's explanations to appellant's *Edmonson* motion. Neither appellant nor appellee offered evidence or argument to rebut each other's explanations. The trial court then ruled on both *Edmonson* motions.

■ Appellee's peremptory strikes of Boston and Peppers were based on their

**2.** Two of appellee's peremptory strikes found to be racially discriminatory were outside the math-ematical range of veniremembers reached in forming the jury.

nonverbal conduct. When a peremptory strike is based on a veniremember's nonverbal conduct, the party must describe that conduct or an inference of discrimination will arise. *See Hill v. State*, 827 S.W.2d 860, 870 (Tex.Crim.App.), *cert. denied*, 506 U.S. 905, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992); *Dominguez v. State Farm Ins. Co.*, 905 S.W.2d 713, 717 (Tex.App.—El Paso 1995, writ dism'd by agr.). Appellee described the veniremembers' specific conduct that was the basis of his strikes: Boston's sneering and Peppers's looking "extremely mean." These reasons are facially race neutral. Appellant has not shown that the trial court's determination was clearly erroneous. Accordingly, we overrule appellant's first point of error.

## Appellee's Prima Facie Case

In his second point of error, appellant asserts that the trial court erred in requiring appellant to explain his peremptory strikes because appellee did not make a prima facie case. Appellant exercised all of his peremptory strikes against white veniremembers. Appellant asserts for the first time on appeal that *Batson* and its progeny do not apply to the striking of white or "majority" veniremembers. Because appellant did not object on this ground at trial, any error is waived. *See* TEX.R.APP. P. 52(a); *J.R.W. v. State*, 879 S.W.2d 254, 258 (Tex.App.—Dallas 1994, no writ) (equal-protection argument waived by failure to assert at trial); *Commonwealth Lloyd's Ins. Co. v. Thomas*, 825 S.W.2d 135, 147 (Tex.App.—Dallas 1992) ("A party may not enlarge a ground of error on appeal to include an objection not asserted at trial."), *vacated on other grounds*, 843 S.W.2d 486 (Tex.1993). Furthermore, because appellant explained the reasons for the peremptory strikes, the issue of appellee's establishment of a prima facie case is moot. *See Malone v. State*, 919 S.W.2d 410, 412 (Tex.Crim.App.1996) (plurality opinion); *Reich–Bacot v. State*, 789 S.W.2d 401, 403 (Tex.App.—Dallas 1990), *pet. dism'd per curiam*, 815 S.W.2d 582 (Tex. Crim.App.1991).

In the interest of justice, however, the Court will address the merits of appellant's argument. Appellant relies on several cases

stating that the peremptorily struck veniremember must be a racial minority. *See Malone v. State*, 899 S.W.2d 256, 259 (Tex. App.—Houston [14th Dist.] 1995), *rev'd on other grounds*, 919 S.W.2d 410 (Tex.Crim. App.1996); *Benavides v. American Chrome & Chem., Inc.* 893 S.W.2d 624, 626 (Tex. App.—Corpus Christi 1994), *writ denied per curiam*, 907 S.W.2d 516 (Tex.1995); *In the Interest of A.D.E.*, 880 S.W.2d 241, 243 (Tex. App.—Corpus Christi 1994, no writ); *Texas Tech Univ. Health Sciences Ctr. v. Apodaca*, 876 S.W.2d 402, 407 (Tex.App.—El Paso 1994, writ denied). Although not cited by appellant, we note that the court of criminal appeals has also made a similar statement. *See Rousseau v. State*, 824 S.W.2d 579, 584 n. 9 (Tex.Crim.App.1992), *cert. denied*, 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993). In each of these cases, however, the veniremembers subject to the *Batson/Edmonson* motions were racial minorities. Thus, whether a veniremember *must* be a racial minority to be entitled to the protection of *Batson* was never an issue in these cases.

Each of the cases appellant cites, as well as *Rousseau*, relies on *Batson* or *Powers* for the statement that the veniremember subject to the *Batson* motion must be a racial minority. We have reviewed *Batson* and *Powers*. Contrary to appellant's cases and *Rousseau*, neither *Batson* nor *Powers* expressly limits its holding to peremptory strikes of racial minorities. Accordingly, we must examine the purposes and intent of *Batson* and its progeny to determine whether *Batson* should apply to peremptory strikes of racial majority veniremembers.

In *Batson*, the Supreme Court considered the rights of defendants, veniremembers, and society in formulating a procedure to prevent racial discrimination in jury selection in a case involving a black defendant. *See Batson*, 476 U.S. at 85–87, 106 S.Ct. at 1716–18. Defendants have "the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria." *Id.* at 85–86, 106 S.Ct. at 1717. A veniremember has the right not to be denied "participation in jury service on account of his race." *Id.* at 87, 106 S.Ct. at 1718. Society requires a nondiscriminatory jury selection system because

"[s]election procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice." *Id.*

In *Powers,* the Supreme Court held that a white defendant could invoke the protections of *Batson* on behalf of a peremptorily struck veniremember. In that case, the veniremember was black. However, the opinion's analysis and holding are completely race neutral. The Supreme Court stated:

> We hold that the Equal Protection Clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race, a practice that forecloses a significant opportunity to participate in civic life. An individual juror does not have a right to sit on any particular petit jury, but he or she does possess the right not to be excluded from one on account of race.

*Powers,* 499 U.S. at 409, 111 S.Ct. at 1370.

■ The purposes and intent of *Batson* and *Powers* do not apply only to "minorities"; they apply equally to all races. To the extent that *Batson* specified the "black" race in its discussion, the opinion does not evince an intent to limit its application to that race. Nothing in either case indicates that the Supreme Court intended to limit its holding to racial minority veniremembers. When relevant circumstances raise an inference of a race-based exclusion of a white veniremember, we conclude that the exclusion would "undermine public confidence in the fairness of our system of justice" the same as the race-based exclusion of a black veniremember. · *See Batson,* 476 U.S. at 87, 106

S.Ct. at 1718. Accordingly, we disagree with the dicta in the courts of appeals' and the court of criminal appeals' opinions stating that the protections of *Batson* apply only to racial minority veniremembers.[3]

At oral argument, appellant argued that the rationale of *Batson* and the case law from which *Batson* derived was the intention to help racial minorities overcome historical racial prejudice, not to assist members of the white or majority racial group. Because appellant did not object on this ground at trial, any error is waived. *See* TEX.R.APP. P. 52(a); *see J.R.W.,* 879 S.W.2d at 258 (equal-protection argument waived by failure to assert at trial); *Commonwealth Lloyd's Ins. Co.,* 825 S.W.2d at 147 ("A party may not enlarge a ground of error on appeal to include an objection not asserted at trial."). Appellant's failure to present the argument in his brief also waives the argument. TEX.R.APP. P. 74(f); *see Lewis v. Texas Util. Elec. Co.,* 825 S.W.2d 722, 726 (Tex.App.—Dallas 1992, writ denied) (failure to brief argument results in waiver of argument). However, we will address appellant's argument in the interest of justice.

Although appellant may be correct in his assertion that *Batson* was originally intended to help racial minorities overcome historical prejudice, he does not explain how permitting *Batson* challenges on behalf of racial majority veniremembers would interfere with this purpose. The Supreme Court has not addressed the applicability of *Batson* to racial majority veniremembers, but it has analyzed the applicability of *Batson* to gender-based strikes against male veniremembers. In *J.E.B. v. Alabama,* the Supreme Court examined the historical prejudice against women sitting on juries and concluded that

---

3. Two federal courts have confronted the issue of the applicability of *Batson* to white veniremembers and concluded that *Batson* applied. *See Virgin Islands v. Forte,* 865 F.2d 59, 64 (3d Cir.1989), *cert. denied,* 500 U.S. 954, 111 S.Ct. 2262, 114 L.Ed.2d 714 (1991); *Roman v. Abrams,* 822 F.2d 214, 228 (2d Cir.1987), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1311, 103 L.Ed.2d 580 (1989). We note that a court has upheld the use of *Batson* in cases involving exclusion of ethnic groups that may fall within the majority race, such as Italian–Americans. *See United States v. Biaggi,* 853 F.2d 89, 96 (2d Cir.1988), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989). *But cf. United States v. DiPasquale,* 864 F.2d 271, 276 n. 9 (3d Cir.1988) (under facts of this case, Italian–Americans not entitled to *Batson's* protections), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989). We also note that one court discussed the issue of the applicability of *Batson* to members of the white race but concluded that it could not determine the issue in the context of a habeas corpus case. *See generally Echlin v. LeCureux,* 995 F.2d 1344 (6th Cir.), *cert. denied,* 510 U.S. 993, 114 S.Ct. 552, 126 L.Ed.2d 453 (1993).

*Batson* should apply to prohibit gender-based strikes. *J.E.B. v. Alabama*, 511 U.S. 127, ——, 114 S.Ct. 1419, 1430, 128 L.Ed.2d 89 (1994). The Court then applied *Batson* to the case before it and determined that the State's gender-based strikes of all *male* veniremembers violated the Equal Protection Clause. *See id.* at ——, ——, 114 S.Ct. at 1422, 1430; *see also J.E.B. v. State ex rel. T.B.*, 641 So.2d 821 (Ala.Civ.App.1994) (*J.E.B.* on remand from the Supreme Court). Applying the same reasoning to this case, the fact that *Batson* was a response to historical prejudice against racial minorities on juries does not make *Batson* inapplicable to race-based strikes against veniremembers of the racial majority.

Other cases interpreting the Equal Protection Clause support our decision that *Batson* applies to veniremembers of all races. The purpose of *Batson* and its progeny was to set up a standard of review for a claim that a party violated the Equal Protection Clause by peremptorily striking a veniremember because of his race. *See Batson*, 476 U.S. at 96–98, 106 S.Ct. at 1722–24. The Supreme Court has stated that "the standard of review under the Equal Protection Clause is not dependent on the race of those burdened or benefited by a particular classification." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 494, 109 S.Ct. 706, 711, 102 L.Ed.2d 854 (1989). The Supreme Court has also held that programs intended to help racial minorities overcome historical prejudice, such as racial set-aside requirements in construction contracts and the Voting Rights Act's prohibition against dilution of racial minority voting strength, violate the Equal Protection Clause when they permit invidious racial discrimination, including discrimination against members of the racial majority, or segregation of the races. *See generally Bush v. Vera*, —— U.S. ——, 116 S.Ct. 1941, 135 L.Ed.2d 248 (1996) (citing *Powers* ); *City of Richmond*, 488 U.S. 469, 109 S.Ct. 706.

Appellant's argument that the law protects one race but not another goes against the very purpose of the Equal Protection Clause, best expressed by Justice Harlan a century ago:

Our Constitution is color-blind, and neither knows nor tolerates classes among citizens. In respect of civil rights, all citizens are equal before the law. The humblest is the peer of the most powerful. The law regards man as man, and takes no account of his surroundings or of his color when his civil rights as guaranteed by the supreme law of the land are involved.

*Plessy v. Ferguson*, 163 U.S. 537, 559, 16 S.Ct. 1138, 1146, 41 L.Ed. 256 (1896) (Harlan, J., dissenting).

Accordingly, if appellant had preserved for appellate review the issue of the application of *Batson* to racial majority veniremembers, we would hold that, notwithstanding the original intent of *Batson* to remedy historical racial prejudice against racial minorities, the protections of *Batson* apply equally to veniremembers of all races. We overrule appellant's second point of error.

### Appellant's Peremptory Strikes

In his third point of error, appellant contends that the trial court erred in sustaining appellee's *Edmonson* motion to appellant's peremptory strikes of veniremember twenty, Rebecca Whitt, and veniremember twenty-three, George Ferguson. Appellant explained these peremptory strikes as follows:

The next juror that we struck, Your Honor, was Juror No. 20, Ms. Rebecca Whitt, who is a vice-president at Central Bank. And, your Honor, relative to the credentials that she sets forth here in terms of her position with the bank, we felt that that was not the type of juror, given the strikes that we had still available to us, by virtue of her employment that we would elect to leave on the jury.

And the other one was Juror No. 23 who identified his employment as decorator. It was our concern that when you talk about decorator, that might get involved in terms of movies set construction and actual like store display construction, things of that nature which is the type of employment that Mr. Short is engaged in.

The trial court immediately sustained appellee's *Edmonson* motion to these two veniremembers. The record does not show that

appellant questioned these veniremembers about their professions.

■ As appellant notes, "the explanations given for striking these two jurors ... certainly meet the non-race consideration." However, at that point it lies within the trial court's discretion to determine whether the explanation given was a pretext or sham for discrimination. If a party makes an assumption about a veniremember but does not question the veniremember to verify the assumption, it is some indication that the peremptory strike was not race neutral. *Esteves v. State,* 859 S.W.2d 613, 615 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd).

■ In this case, appellant did not question veniremembers Whitt and Ferguson to verify his assumptions about their employment. Thus, the trial court could have determined that appellant's explanation was a pretext or sham. Appellant does not explain how such a determination would be an abuse of discretion by the trial court. Accordingly, appellant has not shown that the trial court's ruling was clearly erroneous. We overrule appellant's third point of error.

## MOTION FOR LEAVE TO FILE AMENDED ANSWER

In his fourth point of error, appellant contends that the trial court erred in denying his motion for leave to file an amended answer. Appellant's initial appearance in this action was by his original answer, which asserted only a general denial. Appellant did not amend his answer before trial. Trial began on December 6, 1994, approximately one year and five months after appellee filed his original petition. On December 12, 1994, appellee rested his case in chief. After four of appellant's five witnesses had testified, appellant sought leave to file an amended answer, which asserted for the first time self-defense, failure to mitigate damages, and the truth of allegedly libelous statements by appellant.[4]

Appellee objected to the filing of the amended answer, asserting surprise and prejudice. Appellant argued that he had raised the issue of self-defense during discovery. The trial court denied appellant leave to file an amended answer.

## Texas Rule of Civil Procedure 66

Appellant relies on rule 66 of the Texas Rules of Civil Procedure,[5] which provides:

If evidence is objected to at the trial on the ground that it is not within the issues made by the pleading or if during the trial any defect, fault or omission in a pleading, either of form or substance, is called to the attention of the court, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits. The court may grant a postponement to enable the objecting party to meet such evidence.

TEX.R. CIV. P. 66. This rule mandates that a trial court grant leave to file a trial amendment *unless:* (1) the opposing party presents evidence of surprise or prejudice, or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. *See State Bar of Texas v. Kilpatrick,* 874 S.W.2d 656, 658 (Tex.) (per curiam), *cert. denied,* —— U.S. ——, 114 S.Ct. 2740, 129 L.Ed.2d 860 (1994); *Chapin & Chapin, Inc. v. Texas Sand & Gravel Co.,* 844 S.W.2d 664, 665 (Tex.1992) (per curiam).

## Assertion of a New Defense

■ An amended pleading that asserts a new cause of action or defense and "reshapes" the litigation prejudices the op-

---

4. Appellee's original petition contained a defamation cause of action. However, appellee did not include defamation in his first amended petition, which was the live pleading when appellant sought leave to file an amended answer.

5. At the close of the evidence, appellant moved the trial court to reconsider appellant's motion to

amend his answer, citing rule 67. *See* TEX.R. CIV. P. 67. On appeal, appellant does not assert that rule 67 applies. Thus, he has waived the issue. TEX.R.APP. P. 74(f); *see Vawter v. Garvey,* 786 S.W.2d 263, 264 (Tex.1990) (per curiam); *Cole v. Hall,* 864 S.W.2d 563, 567 (Tex.App.—Dallas 1993, writ dism'd w.o.j.) (en banc).

posing party. *See Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 940 (Tex. 1990); *Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex.1980). In such a case, the trial court's decision to allow or deny a trial amendment may be reversed only if it is a clear abuse of discretion. *Kilpatrick*, 874 S.W.2d at 658; *Chapin & Chapin, Inc.*, 844 S.W.2d at 665.

■ There can be little doubt here that the amended pleading would have "reshaped" the litigation. The case went to trial on a general denial. Appellant's answer, not his discovery responses, put appellee on notice of the issues and evidence he would be called upon to meet at trial. *See Erisman v. Thompson*, 140 Tex. 361, 366, 167 S.W.2d 731, 733 (1943); *Crain v. San Jacinto Sav. Ass'n*, 781 S.W.2d 638, 639 (Tex.App.—Houston [14th Dist.] 1989, writ dism'd). Appellee had presented his evidence and had already rested when appellant filed his motion for leave to amend the answer. The amended pleading asserted new defenses, including self-defense, an affirmative defense of justification. Thus, the amended pleading would have reshaped the cause of action from one of a denial of the allegations to an admission that the allegations occurred but were justified. The focus of the facts and the jury's deliberations would have shifted from the conduct of appellant to that of appellee. Appellee could have presented his case differently if appellant had timely pleaded the affirmative defense of self-defense. Appellant's affirmative defense asserted in his amended answer constitutes a "new" defense, one of justification, not denial. *Cf. Missouri Pac. R.R. v. Buenrostro*, 853 S.W.2d 66, 70 (Tex.App.—San Antonio 1993, writ denied) (initial assertion of limitations defense in trial amendment can be "new" defense even when limitations issue is apparent on face of petition).

Because the objected-to amended answer contained a new defense that would have reshaped the litigation, it was prejudicial on its face; thus, the decision to grant or deny leave to amend was not mandatory but was discretionary with the trial court.

## Abuse of Discretion

■ Having determined that leave to amend was discretionary, we now determine whether the trial court abused its discretion in denying appellant leave to amend. The trial court does not abuse its discretion in denying an amendment when the record shows a lack of diligence by the party seeking to file the amendment. *Buenrostro*, 853 S.W.2d at 71.

■ In this case, appellant proceeded to trial with only a general denial as his answer even though the case had been pending for more than a year and five months. The record shows that appellant knew early in the case that self-defense could be an affirmative defense. Appellant did not present his motion to amend the answer until after appellee had rested and appellant had presented four of his five witnesses. These facts reflect a lack of diligence by appellant in seeking to amend the answer and suggest a strategic delay in an effort to prejudice appellee's presentation of his case.

Appellee stated that he knew appellant had asserted self-defense in certain discovery documents, but he relied upon appellant's answer and presented his case in a manner that did not anticipate the presentation of evidence of affirmative defenses.[6] *See Erisman*, 140 Tex. at 366, 167 S.W.2d at 733; *Crain*, 781 S.W.2d at 639. Appellant presented no argument or evidence to rebut appellee's assertions. The amendment would have prejudiced appellee because he would have presented his case differently if the affirmative defense had been timely pleaded. Appellant has failed to show that the trial court abused its discretion.

### Appellant's Authorities Inapplicable

Appellant asserts that the issue of self-defense was raised during discovery and that appellee could not have been surprised by

---

**6.** Appellee's exact words were: "Now, granted in his responses to the discovery, he has had a story of self-defense. It's just not been raised by the pleadings. And certainly we would have tried this case totally differently had we expected that the Court would allow any testimony of self defense...."

appellant's motion to amend the answer. Appellant argues that the trial court abused its discretion in denying his motion to amend the answer when appellee was not surprised, and he cites two cases in support of this proposition. *See Greenhalgh,* 787 S.W.2d at 940–41; *Zavala v. Trujillo,* 883 S.W.2d 242, 245–49 (Tex.App.—El Paso 1994, writ denied). Both cases hold that a trial court must grant leave unless there is a showing of surprise or prejudice or the amended pleading is prejudicial on its face. *Greenhalgh,* 787 S.W.2d at 939; *Zavala,* 883 S.W.2d at 245. In each case, there was no showing of surprise or prejudice, and the amended pleadings did not assert a new cause of action or defense. *Greenhalgh,* 787 S.W.2d at 939; *Zavala,* 883 S.W.2d at 249. Thus, leave to amend was mandatory in these cases, not discretionary. In this case, the objected-to amended pleading, by asserting a new defense that would have reshaped the litigation, was prejudicial on its face, making the motion for leave to amend discretionary; thus, *Greenhalgh* and *Zavala* do not support appellant's argument. We overrule appellant's fourth point of error.

## JURY INSTRUCTIONS

In his fifth point of error, appellant contends that the trial court erred in refusing to submit appellant's requested instructions on battery and self-defense. Appellant cites no authority in support of this point of error; accordingly, appellant has not sustained his burden of presenting "such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue." TEX.R.APP. P. 74(f). Appellant has waived the point of error. *See New York Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 856 S.W.2d 194, 204 (Tex.App.—Dallas 1993, no writ); *D/FW Commercial Roofing Co. v. Mehra,* 854 S.W.2d 182, 189 (Tex.App.—Dallas 1993, no writ). We will, however, address appellant's arguments in the interest of justice.

Appellant argues that the trial court should have submitted a self-defense instruction. In a cause of action for battery, self-defense is an affirmative defense. *See Cooper v. Boyar,* 567 S.W.2d 555, 559 (Tex.Civ. App.—Waco 1978, writ ref'd n.r.e.) (on reh'g). A party is not entitled to have an issue on an affirmative defense submitted to the jury unless he has affirmatively pleaded the defense. *Allstate Ins. Co. v. Perez,* 783 S.W.2d 779, 782 (Tex.App.—Corpus Christi 1990, no writ). Because appellant did not plead self-defense, he was not entitled to an instruction on that issue. Accordingly, appellant's argument lacks merit.

Appellant also argues that the trial court erred in refusing to submit his requested definition of battery. In this case, the jury charge defined "battery" as meaning "the least touching of another person willfully and in anger, by the use of any part of the body of the party committing the offense." Appellant asserts that the instruction should have included an element that the actor acted "with intent to injure" the victim. Although appellant does not cite any authority in his brief, he did cite one statute and one case in his written request for jury instruction: section 22.01(a) of the penal code and *Texas Bus Lines v. Anderson,* 233 S.W.2d 961, 964 (Tex. Civ.App.—Galveston 1950, writ ref'd n.r.e.). Appellant's argument lacks merit because *Texas Bus Lines* and section 22.01 of the penal code concern assaults, not batteries. Battery does not require an assault. *Fisher v. Carrousel Motor Hotel, Inc.,* 424 S.W.2d 627, 629 (Tex.1967). Battery requires only an offensive touching, not an intent to injure. *See id.* at 629–30 (snatching a plate or a book from a person's hands constitutes battery).

Even if *Texas Bus Lines* and section 22.01 did apply, appellant's argument would lack merit. In *Texas Bus Lines,* the court stated that the definition of "assault" is the same under both civil and criminal law. *Texas Bus Lines,* 233 S.W.2d at 964. Section 22.01(a) of the penal code defines assault as occurring when a person "intentionally, knowingly, or recklessly causes bodily injury to another." TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon 1994); *see DeLeon v. Hernandez,* 814 S.W.2d 531, 533 (Tex.App.—Houston [14th Dist.] 1991, no writ). The penal code states that a person acts "intentionally, or with intent ... when it is his conscious objective or desire to ... cause the result." TEX. PENAL CODE ANN. § 6.03(a)

(Vernon 1994). A person acting "knowingly" or "recklessly" does not have to intend to cause the result. *See* TEX. PENAL CODE ANN. § 6.03(b), (c) (Vernon 1994). Because an assault can be committed either knowingly or recklessly as well as intentionally, appellant is incorrect in asserting that intent to injure is an element of assault or battery.[7] Therefore, the trial court did not err in refusing to submit appellant's requested jury instructions. We overrule appellant's fifth point of error.

## DAMAGES

■ In his sixth point of error, appellant contends that the evidence is insufficient to support the jury's award of damages in answer to jury question 2. Appellant cites no authority in support of this point of error. Accordingly, he has waived the point of error on appeal. TEX.R.APP. P. 74(f); *New York Underwriters Ins. Co.*, 856 S.W.2d at 204; *D/FW Commercial Roofing Co.*, 854 S.W.2d at 189. In the interest of justice, however, we will consider appellant's argument.

The jury question, and the jury's answer, were as follows:

2. What sum of money, if any, if paid now in cash, do you find would fairly and reasonably compensate Plaintiff for his injuries, if any, which resulted from the battery by Defendant?

Consider the elements of damages listed below and none other. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

Element a. Physical pain and mental anguish.

Element b. Loss of earning capacity[.]

Element c. Disfigurement.

Element d. Medical care.

Answer in dollars and cents for damages, if any, that were sustained in the past and that in reasonable probability will be sustained in the future.

Answer: 113,838.01

Appellant's argument on appeal is that the evidence does not support the damage award

for lost wages. Appellant's argument lacks merit because lost wages was not an element of the damages award. *See Border Apparel–East, Inc. v. Guadian,* 868 S.W.2d 894, 897 (Tex.App.—El Paso 1993, no writ) (lost earnings refers to an actual loss of income; lost earning capacity encompasses the plaintiff's impairment to work after the trial).

The only way that an appellant can successfully attack on appeal a multi-element damages award is to address all of the elements and show that the evidence is insufficient to support the entire damages award considering all the elements. *See Greater Houston Transp. Co. v. Zrubeck,* 850 S.W.2d 579, 589 (Tex.App.—Corpus Christi 1993, writ denied); *see also Haryanto v. Saeed,* 860 S.W.2d 913, 922 (Tex.App.—Houston [14th Dist.] 1993, writ denied). The failure to address an element of damages results in waiver of the sufficiency challenge. *Haryanto,* 860 S.W.2d at 922; *Greater Houston Transp. Co.,* 850 S.W.2d at 579; *see Thomas v. Oldham,* 895 S.W.2d 352, 360 (Tex.1995).

■ Assuming that appellant actually meant to challenge the sufficiency of the evidence to support the element of loss of earning capacity, we will, in the interest of justice, consider the sufficiency of the evidence. However, appellant does not discuss the elements of physical pain and mental anguish, disfigurement, and medical care. Because appellant failed to discuss all the elements of damages, he has waived his challenge to the sufficiency of the evidence.

■ Even if appellant had not waived the issue, his challenge to the sufficiency of the evidence would lack merit. The standard of review for an excessive damages point of error is factual sufficiency of the evidence. *Rose v. Doctors Hosp.,* 801 S.W.2d 841, 847–48 (Tex.1990); *Pope v. Moore,* 711 S.W.2d 622 624 (Tex.1986). In addressing a factual-sufficiency-of-the-evidence challenge upon a jury verdict, an appellate court must consider and weigh *all* of the evidence, not just that evidence which supports the verdict. *City of Princeton v. Abbott,* 792 S.W.2d 161, 163 (Tex.App.—Dallas 1990, writ denied); *see Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

---

7. We note that appellee did not allege in his petition that appellant intended to injure him.

The verdict should be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain,* 709 S.W.2d at 176; *Dyson v. Olin Corp.,* 692 S.W.2d 456, 457 (Tex.1985). However, this Court is not a fact finder, and we may not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if a different answer could be reached upon review of the evidence. *Clancy v. Zale Corp.,* 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

The record shows that the damages for appellee's medical care were $13,838.01. Appellee's wife and his doctor testified to the severe pain appellee endured. Appellee testified about the trauma of having a county commissioner "intentionally putting pressure on [his] leg such that [he is] watching [his] ankle crumble in front of [him]." Appellee's doctor also testified to appellee's disfigurement and physical impairment. Damages for items such as pain, suffering, mental anguish, and disfigurement are incapable of precise measurement. In the absence of precise guidelines, the reviewing court defers to the jury's discretion in determining awards for these elements of damages. *See George Grubbs Enters., Inc. v. Bien,* 881 S.W.2d 843, 858 (Tex.App.—Fort Worth 1994), *rev'd on other grounds,* 900 S.W.2d 337 (Tex.1995) (error in jury instruction on exemplary damages); *Haryanto,* 860 S.W.2d at 923; *Arrington v. Paschall,* 352 S.W.2d 866, 870 (Tex.Civ.App.—Dallas 1961, writ ref'd n.r.e.). Based on the record before us, we cannot say that the evidence is so against the great weight and preponderance of the evidence as to be manifestly unjust. Thus, if appellant had preserved his right to challenge the sufficiency of the evidence, we would hold that the jury's damages award is supported by sufficient evidence. We overrule appellant's sixth point of error.

We affirm the trial court's judgment.