**WAL–MART STORES, INC., Appellant,**

v.

**Ruby ARD and J.C. Ard, Appellees.**

No. 09–97–361CV.

Court of Appeals of Texas, Beaumont.

Submitted April 15, 1999.

Decided June 10, 1999.

Rehearing Overruled July 15,1999.

J. Preston Wrotenbery, Magenheim, Bateman, Robinson, Wrotenbery & Helfand, PLLC, Houston, for appellant.

Ray Hensarling, Walter Umphrey, Joe Fisher, II, Provost & Umphrey Law Firm, LLP, Beaumont, for appellee.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

DON BURGESS Justice.

This appeal arises from a premises liability cause of action filed by Ruby and J.C. Ard against Wal–Mart Stores, Inc. Ruby was injured when a portable basketball goal at the Wal–Mart Store in Woodville, Texas, fell over, striking her in the head, neck and shoulder area. The jury awarded Ruby $150,000 in damages and awarded J.C. $15,000 in damages. Wal–Mart appeals raising three issues.

In its first issue, Wal–Mart contends there is no evidence, or alternatively insufficient evidence, to support an award of loss of earning capacity. Within this issue Wal–Mart makes several arguments. First, there is no evidence of loss of earning capacity in the past. Second, the evidence is factually insufficient to support an award for loss of earning capacity in the future. Third, because there is *no* evidence, loss of earning capacity as an element of damages should not have been submitted to the jury.

Regarding the sufficiency of the evidence to support the jury's award, the question submitted to the jury asked for separate amounts for damages sustained in the past and damages that will be sustained in the future, but called for a total damage amount as to all of the elements of damage rather than for a specific amount

as to each element. The elements listed entailed not only loss of earning capacity but also physical pain and mental anguish, physical impairment, and medical care. We first decide whether an evidentiary review of a single element is appropriate when damages were not segregated.

As the court recognized in *Greater Houston Transp. Co., Inc. v. Zrubeck,* 850 S.W.2d 579 (Tex.App.—Corpus Christi 1993, writ denied),

> ... [W]hen a damages issue is submitted in broad-form, an appellate court cannot ascertain with certainty what amount of the damages award is attributable to each element. Furthermore, when the elements of actual damages considered by the jury include the more amorphous, discretionary damages, e.g., mental anguish, pain and suffering, physical impairment and disfigurement, any amount awarded above the more definitive damages, such as past medical expenses and lost wages, will be shunted to the discretionary domain of the jury. Thus, under the current practice, a meaningful review on appeal of damages questions submitted in broad-form is extremely difficult.
>
> The only way that a defendant can successfully attack a multi-element damages award on appeal is to address each and every element and show that not a single element is supported by sufficient evidence. If there is just one element that is supported by the evidence, the damages award will be affirmed if it is supported by the evidence.

*Id.* at 589 (citations omitted) (footnote omitted). The *Zrubeck* court held Greater Houston had "waived any complaint concerning the sufficiency of the evidence regarding actual damages by failing to request findings on each element of damages, and by failing to address all of the elements of damage in its argument." *Id.* The *Zrubeck* court then determined whether the aggregate evidence support-

ing the elements in the question was sufficient to support the jury's assessment of damages. *Id.* at 589–90.

The approach taken by the court in *Zrubeck* has been adopted by many other courts of appeal, including this one. *See Cal–Tex. Lumber Co., Inc. v. Owens Handle Co., Inc.,* 989 S.W.2d 802, 814–15 (Tex. App.—Tyler 1999, n.p.h.); *Goodman v. Page,* 984 S.W.2d 299, 304 (Tex.App.—Fort Worth 1998, n.p.h.); *City of Port Isabel v. Shiba,* 976 S.W.2d 856, 858–59 (Tex.App.—Corpus Christi 1998, pet. denied); *City of Beaumont v. Gallien,* 949 S.W.2d 57 (Tex.App.—Beaumont 1997) (not designated for publication).[1] *Price v. Short,* 931 S.W.2d 677, 688 (Tex.App.—Dallas 1996, no writ); *Pitman v. Lightfoot,* 937 S.W.2d 496, 524–25 (Tex.App.—San Antonio 1996, writ denied); and *Haryanto v. Saeed,* 860 S.W.2d 913, 921–22 (Tex. App.—Houston [14th Dist.] 1993, writ denied).

In *Cal–Tex,* the court noted Cal–Tex did not object to the court's broad form submission on the damages issue. *Cal–Tex.,* 989 S.W.2d at 815–16. The court found that with the exception of Cal–Tex's complaint that the element of lost profits was as a matter of law too speculative to have been submitted to the jury, Cal–Tex had waived its legal sufficiency complaints as to specific elements of damages. *Id.* The court determined that as a consequence, except for lost profits, it was limited to a factual sufficiency review of damages. *Id.*

The Corpus Christi Court of Appeals recently reaffirmed *Zrubeck* in *City of Port Isabel,* 976 S.W.2d at 858–59. The court noted that the City contested some components of the damages award, but did not attack "each and every element." *Id.* Because other damages, not challenged by the City, were supported by the evidence the court affirmed the jury's determination of damages. *Id.*[2]

---

1. A portion of *Gallien* not pertinent to the issue discussed here was published. *See City*

*of Beaumont v. Gallien,* 949 S.W.2d 57 (Tex. App.—Beaumont 1997, writ denied).

Likewise, in *Pitman*, the court determined appellants had failed to challenge all of the elements of damages. *Pitman*, 937 S.W.2d at 524–25. The *Pitman* court noted that if at least one element of damages was supported by legally and factually sufficient evidence, appellants would lose their sufficiency challenge. *Id.*

In contrast, in *Goodman*, the appellants did "address each and every element" in challenging the multi-element damages award. *Goodman*, 984 S.W.2d at 304–06 (quoting *Zrubeck*, 850 S.W.2d at 589). Accordingly, the *Goodman* court considered the factual and legal sufficiency of the evidence to support each element and affirmed the damages award. *Id.* at 305–07.

In *Price*, the court found that because Price failed to address all the elements of damages, he waived his challenge to the sufficiency of the evidence, and concluded that if Price had preserved his complaint, the court would have held that the damages award was supported by sufficient evidence. *Price*, 931 S.W.2d at 688. However, the court went on to address the merits of Price's complaint, conducted a review of the sufficiency of the evidence, and concluded that if Price had preserved his complaint, the court would have held that the damages award was supported by sufficient evidence. *Id.* at 688–89.

In *Haryanto*, the court noted that appellant failed to request findings on each element of damages or to address all elements of damages in its argument and, therefore, failed to preserve error. *Haryanto*, 860 S.W.2d at 922. The court then went on to review the "aggregate evidence" and concluded it supported the award of actual damages. *Id.* at 923.

This court, in an unpublished portion of *Gallien*, did not consider the sufficiency of the evidence to support each separate element where the question contained five elements of damages but asked for only one amount for the past and one amount for the future. *Gallien*, No. 09–96–169 CV at 15–18. We noted that the City did not complain about the manner in which the question was submitted and did not submit any proposed question. *Id.* at 16. This court looked at the evidence as a whole and determined there was ample evidence supporting the award of damages. *Id.* at 17.

■ Considering the above authorities, we conclude we are unable to conduct an evidentiary review as to an individual element of damages where the jury question called for a total amount as to all elements of damages. *See Wal–Mart Stores, Inc. v. Garcia*, 974 S.W.2d 83, 85–87 (Tex.App.—San Antonio 1998, no pet.). The Supreme Court of Texas reached the same conclusion in the recent case of *Thomas v. Oldham*, 895 S.W.2d 352 (Tex.1995). In that case, the trial court submitted a broad form damage question with five separate elements of damages but asking for just one total amount. *Id.* at 359. The court rejected the City's no evidence challenge to certain elements of the verdict, noting the City did not argue the evidence favorable to the verdict, considered as a whole, was legally insufficient. *Id.* at 359–60.

Wal–Mart cites *Texas Indus., Inc. v. Vaughan*, 919 S.W.2d 798 (Tex.App.—Houston [14th Dist.] 1996, writ denied), for the proposition that "[w]hen damages are not segregated, the case must be remanded on all damages if there is reason to remand on one element of damages because of legally or factually insufficient evidence to support that particular element." In *Vaughan*, the element in question was mental anguish. We first note that in *Vaughan* mental anguish was not pleaded by the plaintiff. *Id.* at 803. At the jury charge conference prior to submission of the charge, the defendant specifically objected to the inclusion of that

---

2. The Corpus Christi Court of Appeals recently rejected a challenge by Wal–Mart that *Zrubeck* was insufficiently authoritative. *Wal–*

*Mart Stores, Inc. v. Sholl*, 990 S.W.2d 412, 419–20 (Tex.App.—Corpus Christi 1999, n.p.h.)(not yet released for publication).

element—thus the issue was not tried by consent. *Id.* The court of appeals found the defendant did not invite the error and then noted the evidence was factually insufficient to support damages for mental anguish. *Id.* at 804. The court of appeals then stated that "[b]ecause the trial court failed to segregate damages, the case must be remanded on all damages if we find reason to remand on one element of damages." *Id.* (citing *Worsham Steel v. Arias,* 831 S.W.2d 81, 87–88 (Tex.App.—El Paso 1992, no writ). However, the court noted that because damages were not segregated, "it is possible that the jury did not award Vaughan any money for mental anguish." *Id.* at 804 n. 2.

*Worsham Steel,* the case *Vaughan* relies on as authority, found that "[b]ecause the trial court's charge failed to divide the damages issue, it is impossible to segregate the corresponding amount of damages to any of the respective elements. As a consequence, a remand is dictated as to all actual damages awarded by the jury." *Worsham Steel Co.,* 831 S.W.2d at 87–88. The *Worsham Steel* court noted that absent mental anguish (for which there was factually insufficient evidence) the evidence in the record only supported an award of $250,000 for past and future lost wages, as opposed to the award of $643,000 actually given by the jury.[3] *Id.* at 85 n. 1, 87.

Thus, *Worsham Steel* does not support the decision in *Vaughan.* Under *Worsham Steel,* the *Vaughan* court should have determined if the other damages could support the entire award and only upon a negative finding would the cause be remanded for a new trial. The *Vaughan* court recognized the possibility the jury made no award for mental anguish, but still remanded for a new trial without making such a determination. This is not only inconsistent with *Worsham Steel,* but also

with the Fourteenth Court of Appeals' own precedent, *Haryanto.* As noted above, in *Haryanto,* the court found error was not preserved where the appellant failed to challenge all elements of the damages but proceeded to review the aggregate evidence and determined it supported the award of damages. *Haryanto,* 860 S.W.2d at 919. The court in *Vaughan* does not distinguish, in fact does not acknowledge, *Haryanto.*

It seems the height of inefficiency to conduct an entire trial, submit a charge to the jury which does not segregate damages, and then grant a new trial because damages are not segregated (particularly when no request was made to segregate). If that were the rule, it seems that personal injury damages should be segregated from the outset, in the interests of judicial economy.[4]

We decline to follow *Vaughan* and *Worsham Steel* to the extent they are inconsistent with *Zrubeck* and its progeny. Accordingly, we do not consider the factual and legal sufficiency of the evidence to support the jury's award for the single element of loss of earning capacity, past or future. We will address the aggregate evidence to support the damages award as raised by Wal–Mart's second issue.

■ We now turn to Wal–Mart's claim that the trial court erred in submitting the element of loss of earning capacity to the jury. During the jury charge conference, Wal–Mart objected to the submission on the grounds of insufficient evidence. We review error in the charge under an abuse of discretion standard. *See Texas Dept. of Human Serv. v. E.B.,* 802 S.W.2d 647, 649 (Tex.1990).

■ "Loss of earning capacity that a party will suffer in the future is always uncertain and left largely to the jury's

---

3. The only elements of damages submitted to the *Worsham Steel* jury were lost wages and mental anguish. *Id.* at 85.

4. We recognize, of course, that this would run contrary to the preferred broad form submission, as endorsed by the Texas Supreme Court in *Lemos v. Montez,* 680 S.W.2d 798 (Tex. 1984).

sound judgment and discretion." *Borden, Inc. v. Guerra,* 860 S.W.2d 515, 524 (Tex. App.—Corpus Christi 1993, writ dism'd by agr.) (citing *McIver v. Gloria,* 140 Tex. 566, 169 S.W.2d 710, 712 (1943)). However, a party should introduce evidence from which a jury might reasonably measure earning capacity prior to the injury and project that party's future loss. *See City of Amarillo v. Langley,* 651 S.W.2d 906, 916–17 (Tex.App.—Amarillo 1983, no writ). Proof of life expectancy is not required to recover lost future earnings, because the jury may reach its own conclusion as to life expectancy based upon evidence of the injured party's age, health and physical condition prior to the injury, and the permanence of the injury. *See Paragon Hotel Corp. v. Ramirez,* 783 S.W.2d 654, 661 (Tex.App.—El Paso 1989, writ denied).

■ Dr. Maynard testified he and Ruby planned for her to continue working at both of Dr. Maynard's offices, filling in as relief and when other employees were on vacation. Dr. Maynard said the injury ended that part-time work. He estimated Ruby would have earned $10,000 to $15,000 per year. According to Dr. Maynard, Ruby worked for him in January before her injury and earned approximately $900 or $1,200. We find the trial court did not err in including the element of lost earning capacity, past or future, in the charge to the jury, inasmuch as there was some evidence of that element. Issue one is overruled.

■ Wal–Mart's second issue asserts the jury's award of $150,000 in damages to Ruby is against the great weight and preponderance of the evidence, or alternatively is excessive. The standard of review for an excessive damages point of error is factual sufficiency of the evidence. *See Rose v. Doctors Hosp.,* 801 S.W.2d 841, 847–48 (Tex.1990). When reviewing a jury verdict to determine the factual sufficiency of the evidence, we must consider and weigh all the evidence, and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence

as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

■ The jury awarded $75,000 for damages sustained in the past and $75,000 for damages that in reasonable probability would be sustained in the future. The elements the jury was to consider were (1) physical pain and mental anguish, (2) loss of earning capacity, (3) physical impairment, and (4) medical care. In its argument Wal–Mart complains only of the evidence regarding medical expenses and physical impairment. While the element of loss of earning capacity was challenged in its first issue, Wal–Mart makes no complaint regarding the element of physical pain and mental anguish.

As noted in our discussion of *Zrubeck,* we determine only if the aggregate evidence is sufficient to support the jury's award of damages. We consider the cumulative weight of the evidence supporting the elements submitted to the jury and determine if it is sufficient to support the jury's assessment of damages.

Both parties agree the record reflects $11,000 in past medical expenses. Thus, the jury could reasonably have awarded that amount for this element.

Regarding future medical care, Dr. Kevin Gorin testified Ruby would incur future medical expenses of approximately $8,000 per year. However, he did not testify how many years Ruby would need such treatment, whether it would be for life, etc. Since Dr. Gorin gave his estimates in terms of "per year", the jury could reasonably have inferred Ruby would need at least one year of continued treatment and awarded $8,000 in future medical expenses.

In its argument under this point, Wal–Mart asserts that Ruby's prescriptions after the accident were the same prescriptions she had before the injury. The record reflects that at the time of trial, Ruby had prescriptions for Fiorinol and Tranxene, which had also been prescribed for her prior to the incident. When asked if

the only medications prescribed since the accident were the same medications prescribed for her before the injury, Ruby replied, "and sometimes pain medicine, like Tylenol." The record does not state whether it was prescription-strength Tylenol, but since Ruby was being questioned about prescription drugs, that is certainly a reasonable inference the jury could have made.

Wal–Mart also claims that Dr. Gorin's anticipated treatment for Ruby was largely massages and other forms of physical therapy (possibly explaining why her prescriptions were largely unchanged) but that Dr. Gorin did not recommend massage treatments. A review of the record reflects Dr. Gorin recommended injection therapy of the trigger point regions as well as physical therapy, psychological support counseling, a wellness and fitness program and massage therapy. Dr. Gorin testified the massage therapy had enabled him to reduce the amount of injection therapy. He then stated that he "would rather she become—she get involved in a more socially reintegrating program like that rather than a massage program, for the long run."

In relation to loss of earning capacity, Dr. Maynard testified he and Ruby planned for her to continue working at both of Dr. Maynard's offices, filling in as relief and when other employees were on vacation. He estimated Ruby would have earned $10,000 to $15,000 per year. According to Dr. Maynard, Ruby worked for him in January before her injury and earned approximately $900 or $1,200. More than two years passed from the date of injury to trial. From the evidence above, the jury could reasonably have inferred Ruby lost two years of work at $15,000 per year, totaling $30,000.

As noted above, Dr. Maynard testified Ruby could have earned up to $15,000 per year. It was for the jury to determine

Ruby's life expectancy based upon her age, health and physical condition prior to the injury, and the permanence of the injury. *See Paragon Hotel Corp.,* 783 S.W.2d at 661. Ruby was only 63 at the time of her injury [5] and, the record reflects, in good health. Evidence was adduced at trial that Ruby could expect to live 19.7 more years.

Wal–Mart does not address the loss of earning capacity element in its argument that the award was excessive but did discuss it under issue one. Wal–Mart first points to the fact that Ruby was retired. In contrast to Dr. Maynard's testimony, Ruby said she did not work any relief between retirement and the incident. According to Wal–Mart, Dr. Maynard testified Ruby worked relief only once during that time, earning between $600 and $700. But the record reflects Dr. Maynard testified Ruby earned from $900 to $1,200 at that time. Wal–Mart notes Dr. Maynard provided no records of Ruby's work and did not recall for whom the relief was provided. However, Dr. Maynard testified he had records at his office that would reflect such things. Wal–Mart also states that there was no evidence Ruby had to refuse to work for Dr. Maynard at any time between the injury and trial. Dr. Maynard testified that since the injury, Ruby was not able to work.

Regarding loss of earning capacity in the future, Wal–Mart complains that Dr. Maynard could not provide any indication of how often Ruby would be needed but merely speculated what she could earn per year. Wal–Mart also notes Ruby did not provide any records of her previous yearly income from Dr. Maynard.

■ Wal–Mart does not challenge the element of physical pain and mental anguish but does claim the evidence is factually insufficient to show physical impairment. We note that even if the evidence

---

5. Twelve years younger than the mandatory retirement age for appellate judges. *See* Tex. Const. art. V, § 1–a.

were not factually sufficient to support an award for physical impairment, as long as the evidence of the other elements (physical pain and mental anguish, loss of earning capacity, and medical care) supports the award, we must sustain the jury's verdict. *See Thomas,* 895 S.W.2d at 359–60.

Ruby was knocked unconscious by the basketball goal. Upon regaining consciousness, she was incoherent and confused. She remained in the hospital for five days. Ruby has no memory of many of the events immediately before the accident or thereafter in the hospital.

Dr. Gorin testified she suffered a fairly severe muscle strain resulting in reduced range of motion in her neck and shoulder. He graded Ruby's physical problems as moderate to severe "because they were so debilitating to her." According to Dr. Gorin, Ruby displayed definite impairments in memory, judgment, reasoning and behavior due to an overlying brain injury which he characterized as moderate. Dr. Gorin further testified Ruby was having post-traumatic headaches.

Wal–Mart asserts that Ruby suffered from tension headaches and tenderness in her scapula area prior to the incident but the record reference for that claim does not support it. Wal–Mart references a report by Dr. Foster noting that Ruby had cortical atrophy commensurate with her age, unrelated to the injury. Dr. Foster also noted Ruby had been diagnosed with a concussion and soft tissue injury. He wrote that Dr. Faulk felt many of her symptoms were related to anxiety and a soft tissue injury. Dr. Foster found Ruby had pain with hyperextension of the cervical spine and pain with left lateral rotation, tenderness over the low back, limited flexion while standing, and mild spasm in the cervical area. His diagnosis was "[c]hronic myofascial pain; post concussion syndrome; cervical and lumbar straining injury; thoracic compression fracture, T11–12 anteriorly." Dr. Foster referred Ruby to Dr. Gorin for pain management. Dr. Fos-

ter believed she can be rehabilitated to a significant degree.

Dr. Faulk testified Ruby's disc degeneration was definitely not caused by the incident and that the bulge at L–5 was "probably not" caused by the accident. He did not feel the bulge was causing her any symptoms. Dr. Faulk also agreed that mild cerebral concussion is something he normally expects patients to fully recover from. Dr. Faulk said he could "not for certain" tell the jury "for sure" that Ruby's headaches, anxiety and problems with coping were a result of the injury. Wal–Mart points out that Dr. Faulk, in a report, noted Ruby had good strength on neck rotation and no restricted movement. In that report, Dr. Faulk also noted Ruby complained of pain in the mid lower cervical and upper thoracic area on extension of the head and that rotation of the head to the left caused pain at the base of the neck while rotation to the right caused some pain extending into the right posterior shoulder. He noted lateral flexion caused pain generally in the right occipital area on flexion to the right or left. Dr. Faulk found Ruby had full range of thoracic movement but complained of pain at the thoracolumbar junction on flexion. He noted Ruby had pain in the lower back and upper hip on flexion beyond 60 degrees and pain in the mid lumbar region on extension of the back. Dr. Faulk found nothing objective to demonstrate damage to the nervous system. He noted many of Ruby's symptoms seemed to be the result of an anxiety reaction with some possibility of a cervical muscular strain and a ligamentous strain as the basis of the neck pain. He suggested muscle relaxants and tranquilizers with some non-steroidal anti-inflammatory agents. Dr. Faulk also thought Ruby might benefit from cervical halter traction.

To summarize, for past damages the jury could have awarded $11,000 for medical expenses and $30,000 for loss of earning capacity, leaving $34,000 as the award for past mental anguish and physical im-

pairment. The evidence adduced at trial supports such an award. We conclude the jury's award for past damages is not excessive.

Regarding future damages, the record supports an award of at least $8,000 for medical expenses, leaving $67,000 for future loss of earning capacity, mental anguish and physical impairment. We are unable to conclude such an amount is excessive considering the cumulative evidence.

The jury's findings are not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain,* 709 S.W.2d at 176. Accordingly, we hold the jury's assessment of $150,000 as compensation for actual damages was not excessive. Issue two is overruled.

■ In its final issue, Wal–Mart argues the jury's award to J.C. for loss of consortium and loss of household services, past and future, is excessive. The jury awarded $10,000 for damages sustained in the past and $5,000 for future damages.

According to J.C., prior to the injury Ruby "could do just about anything." He testified they raised a garden; Ruby picked peas and helped build a fence. Ruby cooked and cleaned the house. She did most of the vacuuming, washed all the clothes, and did her own driving. Now, J.C. does the shopping, the vacuuming, a lot of the cleaning, and all the driving. J.C. testified that on some days Ruby has no energy. According to J.C., they had plans to travel but Ruby is unable to travel. He also testified to a personality change in Ruby and a lack of commonsense and self-confidence since the injury. J.C. said that prior to the injury Ruby enjoyed life and had a good attitude.

■ When reviewing a challenge to the factual sufficiency of the evidence, we must consider all of the evidence. *See Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). As contrary evidence, Wal–Mart asserts that although J.C. testified they intended to travel, his heart condition kept him from being able to live too far away from the city hospitals. The testimony Wal–Mart references is not contrary to J.C.'s claim of travel plans. J.C., in answer to the question of whether an aneurysm he previously suffered was a life-threatening problem, said the doctor told him that out where he lived, if the aneurysm burst, he would not have time to get to the hospital. This is not evidence that J.C. was unable to travel due to his heart condition.

■ Wal–Mart next argues that J.C. did not testify Ruby's condition had in any way strained their relationship but instead only testified he loved her and continues to take care of her. This is incorrect. While J.C. did testify he loved his wife, he also said that since the accident Ruby's "got a bad attitude really, even towards me sometimes." Furthermore, as Wal–Mart notes, "[s]pousal consortium is generally defined as 'the mutual right of the husband and wife to that affection, solace, comfort, companionship, society, assistance, and sexual relations necessary to a successful marriage.' " *Wal–Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 328 (Tex.1993) (quoting *Whittlesey v. Miller,* 572 S.W.2d 665, 666 (Tex.1978)). We find no requirement in *Alexander* that each and every one of these rights must have been affected in order for the jury to find J.C. has suffered a loss of consortium. *Id.* As was the case in *Alexander,* there was evidence presented that J.C. and Ruby are unable to engage in their regular activities.

Additionally, the question submitted to the jury did not ask for separate amounts for loss of consortium and loss of household services. Therefore, we are unable to determine how much, if any, the jury awarded solely for loss of consortium. As long as there is sufficient evidence of either loss of consortium or loss of household services, we are unable to say the jury's award is clearly wrong or manifestly unjust.

Lastly, Wal–Mart argues Ruby's prognosis was that she would improve. The amount awarded by the jury for future loss was half the amount awarded for past loss. This is a clear indication the jury considered Ruby's prognosis in making the award.

We find the evidence of loss of consortium and household services is not so weak that the jury's award is clearly wrong and manifestly unjust. *See Cain,* 709 S.W.2d at 176. Further, we find the award of $15,000 is not excessive. *See Alexander,* 868 S.W.2d at 328 (award of $105,000 for loss of household services and consortium upheld). Issue three is overruled.

The judgment of the trial court is AFFIRMED.