A. B. GILBERT and Helen
Gilbert, Appellant,

v.

Gordon L. SMEDLEY, Jr., Franke Basin Exploration Company, a Corporation, and Henry L. Franke, Individually, Appellee.

No. 18390.

Court of Civil Appeals of Texas, Fort Worth.

Feb. 12, 1981.

Rehearing Denied March 12, 1981.

L. J. Varnell, Jr., Mineral Wells, Cantey, Hanger, Gooch, Munn & Collins, and Stephen L. Tatum and S. G. Johndroe, III, Fort Worth, for appellant.

Creighton & Cleveland, and Tom Creighton and David Cleveland, Mineral Wells, Nat J. Harben, Fort Worth, for appellee.

## OPINION

HUGHES, Justice.

A. B. and Helen Gilbert, lessors, have appealed the declaratory judgment rendered by the trial court which extended the primary term of an oil and gas lease (under a force majeure clause) to a period of six months beyond the date said judgment became final. The effect of this ruling would give Smedley Petroleum Resources Corporation the said six months to develope the lessors' entire realty for oil and gas production and, under a continuous development clause, retain for Gordon L. Smedley, Franke Exploration Company and Henry L. Franke, individually, their assigned titles in such leases.

We affirm.

On August 10, 1973 A. B. Gilbert and his wife, as lessors, entered into an oil, gas and mineral lease with Smedley Petroleum Resources Corporation (SPR). The lease covered 1500 acres of land located in Parker and Palo Pinto Counties. The lease contained two paragraphs which are of particular relevance in this appeal:

"2. Subject to the other provisions herein contained, this lease shall be for a term of 5 years from this date (called 'primary term') and as long thereafter as oil, gas or other mineral is produced from said land hereunder."

"10. If any operation permitted or required hereunder, or the performance by Lessee of any covenant, agreement or requirement hereof is delayed or interrupted directly or indirectly by any past or future acts, orders, regulations or requirements of the Government of the United States or any state or other governmental body, or any agency, officer, representative or authority of any of them, or because of delay or inability to get materials, labor, equipment or supplies, or on account of any other similar or dissimilar cause *beyond the control of Lessee*, the period of such delay or interruption shall not be counted against the Lessee, and the primary term of this lease shall automatically be extended after the expiration of the primary term set forth in Section 2 above, so long as the cause or causes for such delays or interruptions continue and for a period of six (6)

months thereafter; and such extended term shall constitute and shall be considered for the purposes of this lease as a part of the primary term hereof. The provisions of Section 4 hereof, relating to the payment of delay rentals shall in all things be applicable to the primary term as extended hereby just as if such extended term were a part of the original primary term fixed in Section 2 hereof. The Lessee shall not be liable to Lessor in damages for failure to perform any operation permitted or required hereunder or to comply with any covenant, agreement or requirement hereof during the time Lessee is relieved from the obligations to comply with such covenants, or agreements or requirements." (Emphasis added.)

The lease also provided that at the end of the primary term, subject to the continuous drilling provisions, the lease would terminate except as to 80 acres in a square around each producing oil well and as to 320 acres in a square around each producing gas well.

On August 15, 1973, SPR assigned all of its rights, title and interest in the Gilbert lease (and several other leases) to its sole shareholder and president, Gordon L. Smedley, Jr. (Smedley). The assignment was made subject to an outstanding overriding royalty interest of seven and one-half of eight-eighths held by persons not parties to this action. SPR, by contract, retained the responsibility of contracting with drilling contractors to drill the wells, testing then, putting them on production and supervising the day-to-day operation of the wells.

In the latter part of 1973, two gas wells, referred to as Gilbert Wells 1 and 2, were completed and assigned to Chemalloy Minerals Limited. Only 320 acres were included in the assignment. By contract, SPR was to operate this acreage for Chemalloy.

Gilbert Wells Nos. 3 through 6 were completed during a period beginning February 11, 1974 and ending with the completion of No. 6 on July 20, 1974. Well 3 was completed as an oil well and had limited production. Wells 4 through 6 were drilled but were "not connected to the line."

Smedley testified that nothing was done as to Gilbert Wells 3 through 6 from July 24, 1974 until January or February of 1975 because of an industry-wide inability to obtain materials and a decision to use available materials for other drilling programs. Smedley further testified that, following the period of shortage up until July 1974, the wells were not "completed" because third party investors had breached an agreement to supply capital and a decision was thereupon made not to put any more of SPR's funds or Smedley's personal funds into the wells.

On July 3, 1975 Smedley assigned to Franke Basin Exploration Company, Inc. (FBEC), "all of his interest, being the overriding royalty interest of 12½% of the gross production and all working interest in the drilled wells under the oil and gas leases; ...: This assignment included the Gilbert lease among several other leases. On the same date FBEC assigned to Smedley a "12½ (12½%) percent working interest, together with twenty-five (25%) percent of all income realized from the sale of processed products ...." This assignment also included the Gilbert lease among several other leases.

On July 29, 1975 SPR's creditors filed a petition instituting involuntary bankruptcy proceedings against SPR. Each creditor had claims for amounts due for goods, equipment and supplies furnished to SPR. On July 30, 1975, upon the application of SPR's creditors, the bankruptcy court appointed a receiver (who later became trustee) to take charge of SPR's property and business for the protection of the creditors. Upon a complaint filed by the receiver against FBEC the bankruptcy court ordered, on August 7, 1975, that the receiver "take possession of the oil and gas properties subject to said operating rights and to cause said properties to be operated in a good and workmanlike manner through a competent third party ...." This order provided that it was without prejudice to anyone's claim of title. Smedley testified that the bankruptcy judge instructed him

not to in any way interfere with any of the activities of the receiver by taking steps to develop the Gilbert lease. He also testified that Henry Franke attempted to have the "properties" released from the supervision of the receiver but was refused. The receiver, Smedley testified, also would not allow any employees of Smedley to assist in the day-to-day operations of the lease it being the desire of the receiver that no one enter the property.

On September 11, 1975 the bankruptcy court authorized the receiver to employ an operator of oil and gas properties in Parker County. On April 29, 1977 an order was rendered authorizing replacement of the initial operator of the Parker County leases. It appears from the record that no development was conducted on the Gilbert lease during the term of the bankruptcy receivership. In fact Gilbert testified that he was "put off" by the receiver when he tried to communicate with the receiver as to development of the property. Mr. Gilbert did testify, however, that he received royalties in kind from time to time presumably from Gilbert Well 3 and that he received a payment for the loss of a bull which had died as a result of drinking oil.

On August 4, 1978 the bankruptcy court authorized a compromise of the controverting claims and a dismissal of the bankruptcy case at such time as a final order of allowance was entered. This order included a release of an alter-ego complaint which had been lodged against Smedley. Mutual releases were thereafter executed pursuant to settlement agreement. As a result of the settlement FBEC was assigned an interest in certain oil and gas and mineral leases including the Gilbert lease. The bankruptcy case was dismissed on September 27, 1978. On October 5, 1978, pursuant to an agreement between FBEC, Henry Franke, SPR and Smedley, FBEC and Henry Franke executed an assignment of one-half of the leasehold estates and working interests received by FBEC in the mutual release settlement to Smedley.

In the meantime, Gilbert had filed an affidavit, of which Smedley was given notice, declaring that, except for the acreage around Gilbert Well 1, he considered the lease to have expired by its own terms on August 10, 1978 and that he would permit no one on the property for further exploration of oil, gas and mineral interests except duly authorized parties who could prove ownership of the pipe and casing located on said wells. On October 10, 1978, after dismissal of the bankruptcy case, two Smedley employees went out to the Gilbert lease and were refused entry by Gilbert and a sheriff's deputy.

Smedley, FBEC and Henry Franke (Plaintiffs) thereafter brought suit in reliance on paragraph 10 of the Gilbert lease seeking a declaratory judgment that, as to the acreage surrounding Gilbert Wells 3 through 6 (about 1200 acres), the primary term of the lease be extended for a period of six months from September 27, 1978 (the date of the dismissal of the bankruptcy case) to March 27, 1979 by reason of the interference caused by the bankruptcy proceedings. Plaintiffs further plead that Gilbert's action in refusing entry upon the lease justified a six month extension of the primary term from the date the judgment in the trial court became final.

The trial court found that before the bankruptcy proceedings the plaintiffs were prevented from completing and producing their wells because of a scarcity of materials. During the bankruptcy proceedings, the court found, the plaintiffs were delayed and interrupted by the orders of the bankruptcy court. These interruptions were found to fall within the purview of paragraph 10 of the Gilbert lease. The trial court further found that following the bankruptcy proceedings Gilbert prevented plaintiffs from entering upon the lease to connect their wells to the pipeline and to do further work.

The trial court declared that, under paragraph 10 of the lease, the primary term be extended six months beyond the date of dismissal of the bankruptcy case and further declared that the refusal of entry upon the lease caused the lease to be extended for period of six months from the date the trial court's judgment became final.

■ We sustain points of error 2 through 5 relative to extending the period of the primary term by reason of scarcity of materials in the period before bankruptcy. It appears that Smedley, by his own testimony, chose to develop other leases during that period to the delay of operations on the Gilbert Wells. The express terms of the lease categorize the causes that would excuse performance as "those beyond control of the Lessee." We cannot hold that a "delay or interruption" resulting from a preferential drilling of other leases was intended (by the parties) to extend the January term of the lease. Though we sustained points of error 2 through 5, we find it incumbent upon us to overrule points of error 1 and 6.

Point of error 1 avers that the trial court erred in holding that the bankruptcy proceedings were effective under the lease to extend the primary term of the lease for a period of six months following the dismissal of such proceedings, alleging such holding incorrect as a matter of law.

■ The Gilberts assert that the fact that the receiver was originally appointed specifically to operate SPR's oil and gas properties, taken together with the receiver's employment of operating companies, indicated an assumption *of the lease* by the receiver who then became obligated to comply with its terms. Therefore, plaintiffs were no longer parties to the lease or subject to its terms. They argue further that the plaintiffs did not regain their interest in the lease until after the expiration of the primary term which expiration was occasioned by the inaction of the receiver.

Repealed Title 11 U.S.C.A. § 110(b) (1979) the Bankruptcy Act provided in part: "The trustee shall assume or reject an executory contract, including an unexpired lease of real property, within sixty days after the adjudication or within thirty days after the qualification of the trustee, whichever is later .... Any such contract or lease not assumed or rejected within that time shall be deemed to be rejected...."

The Gilberts' argument is predicated on the premise that the receiver assumed the *leases*. However, the trial court in its findings of fact specifically found that: the title to the leases was vested in Smedley, FBEC, and Henry L. Franke; and up to the date of the trial of this proceeding title was never divested out of said parties; SPR was adjudged a bankrupt but Smedley was never adjudged a bankrupt; SPR never owned title to said lease during the bankruptcy proceeding or after August 15, 1973 but did have an operating agreement and the right to operate the property on a contract basis. Such operating right was seized by the bankruptcy court and turned over to the receiver as the exclusive operator of the property.

The record supports these findings. The bankruptcy court's "Order on Receiver's Complaint for Recovery of Property and Surrender of Possession" addresses itself to the property subject to SPR's *operating rights* expressly without prejudice to any parties' claim to title or interest. No evidence in the record indicates that assignment of title to the lease was made back to SPR after it had assigned its title away in 1973. The trial court's findings of facts are supported by evidence and are not manifestly erroneous. We are bound by them. *B. G. Hood v. First National Bank of Panhandle*, 410 S.W.2d 449 (Tex.Civ.App.— Amarillo 1966, writ ref'd n. r. e.). The receiver did not assume the lease. He only assumed the operating agreements.

■ Smedley's uncontradicted testimony was that the bankruptcy court warned him not to interfere with the receiver's operations. He also testified that the receiver was very uncooperative. We hold, therefore, that the restraint on those who owned title to the lease was sufficient as a "delay or interruption" caused by the government so as to come within the provisions of paragraph 10 of the subject lease which allows for an extension of the primary term for a period of six months following the dismissal of the bankruptcy case. The owners of the title to the lease, under these circumstances, cannot be held responsible for the inaction of the receiver, over whom they had no

control. The receiver assumed nothing more than an executory contract to operate the lease. Outside a bankruptcy context, such as this, the owners of title to the lease could have taken steps to operate the lease so as to have prevented the expiration of the primary term.

We overrule the Gilberts' first point of error.

■ The Gilberts' sixth point of error is that the trial court erred in holding that Gilbert's acts of preventing Smedley from entering upon the lease and Gilbert's having declared said lease to have expired caused the primary term of the lease to be extended for six months from the judgment of the trial court becomes a final judgment. Such holding they allege to be incorrect as a matter of law.

The Gilberts argue that nondevelopment of the lease was at no time excused; that the lease expired of its own terms on August 10, 1978 and, as a property owner, Gilbert had the right to exclude Smedley who had no more rights than a member of the general public. Our holding that Smedley's nonperformance was excused due to the interference of the bankruptcy case disposes of this point.

■ The secondary argument under this point is that the trial court's Conclusion of Law No. 2 that the primary term of the Gilbert lease be extended for a period of six months after the date the judgment becomes final is in essence a requirement that Gilbert specifically perform his obligation under the lease to refrain from inhibiting Smedley's exercise of his rights as the holder of the dominant mineral estate. They then argue that their performance was excused because Smedley breached the implied covenant of reasonable development in that Smedley failed to exercise due diligence in developing the lease during the period between January 1975 and July 1975.

The plaintiffs made it clear in their pleadings that, by reason of Gilbert's acts in refusing to permit plaintiffs to enter upon the lease, an extension of six months beyond the date the judgment became final was sought. The Gilberts did not raise the breach of implied covenant of reasonable development theory until they submitted their "Appellees' Brief." This breach of the implied covenant of reasonable development argument is one in the nature of an avoidance or affirmative defense. The plaintiffs should have been given notice of such by an affirmative defensive pleading. Tex.R. Civ.P. 94. We do not consider this argument because it was raised for the first time on appeal.

We overrule the Gilberts' sixth point of error.

The judgment of the trial court declaring the primary term of the Gilbert lease to be extended six months from the date of the dismissal of the bankruptcy case and further declaring an extension for a period of six months from the date its judgment became final is affirmed.