Lee GOODMAN, Jr., Goodman–Wade Enterprises, Inc., d/b/a Creative Living, Lee Goodman Investments, Inc., d/b/a Special Services Management, Appellants,

v.

Clara PAGE, Appellee.

No. 2–97–122–CV.

Court of Appeals of Texas, Fort Worth.

Nov. 19, 1998.

Rehearing Overruled Feb. 11, 1999.

Bourland, Kirkman, Seidler & Evans, David Evans, Fort Worth, for Appellant.

Howie & Sweeney, L.L.P., John Howie, Dallas, Holman, Hogan, Dubose & Townsend, Richard P. Hogan, Jr., Houston, for Appellee.

Before DAY, LIVINGSTON, and BRIGHAM, JJ.

## OPINION

SAM J. DAY, Justice.

Goodman–Wade Enterprises, Inc., Lee Goodman, Investments, Inc., and Lee Goodman, Jr.[1] appeal an adverse judgment awarding $973,000 in actual damages, punitive damages, and attorney's fees for the wrongful discharge of Clara Page.

We affirm in part, affirm as modified in part, and reverse and render in part.

## FACTUAL BACKGROUND

This appeal involves a suit for retaliatory discharge brought under chapter 242 of the Texas Health and Safety Code against Goodman–Wade Enterprises, Lee Goodman Investments, and Goodman. Goodman owned a complex network of companies doing business in the health care industry in fourteen states. In Texas, Goodman owned six corporations that owned or operated group homes for mentally disabled individuals, including Goodman–Wade Enterprises and Lee Goodman Investments. Goodman–Wade Enterprises owned and operated group homes in the Palestine area. Lee Goodman Investments provided management services for those homes.

Clara Page began working for Goodman–Wade Enterprises in 1986 as a part-time care provider. By 1988, Page had been named administrator of six group homes in the Palestine region. In 1990, she accepted a position as a member of Lee Goodman Investment's Quality Assurance team, in addition to her administrative role. On March 18, 1993, she was promoted to state administrator over all of Goodman's group homes. Throughout her six-year tenure with the organization, she received numerous bonuses, commendations, and recognition for her service to Goodman's corporations.

On June 16, 1993, Page filed a report with her supervisor, Peter Maung, regarding allegations of abuse in one of the homes. Goodman fired Page on June 30, 1993.[2] Two days later, the Texas Department of Human Services notified Goodman and his corporations that they were barred from participating in all Medicaid programs for 10 years. Because the overwhelming majority of the residents in Goodman's homes were Medicare or Medicaid patients, this prohibition effectively put Goodman and his corporations that owned the homes out of the mental health care business in Texas. As a result, on August 31, 1993, Goodman's homes were sold to a corporation named Rescare.

On September 16, 1993, Page filed suit against Appellants for retaliatory discharge under section 242.133 of the health and safety code.[3] Following a trial on the merits, a jury found in favor of Page and awarded her $470,000 in actual damages and $225,000 in punitive damages. After the parties entered a Rule 11 agreement that a forty percent contingency fee was a reasonable and necessary amount of attorney's fees, the trial court awarded Page an additional $278,000 in attorney's fees.

On appeal, Appellants contend that (1) the evidence was legally and factually insufficient to support the jury's award of $470,000 in actual damages, (2) they were statutorily exempt from liability under chapter 242 of the health and safety code, (3) the evidence was legally insufficient to support the jury's implied finding that Appellants were the owners or employees of an "institution," (4) the trial court erred in holding Appellants jointly and severally liable for $225,000 in exemplary

1. Goodman–Wade Enterprises, Lee Goodman Investments, and Lee Goodman, Jr. will be collectively referred to in this opinion as "Appellants." Except as otherwise noted, Goodman–Wade Enterprises, Inc., d/b/a Creative Living will be referred to as "Goodman–Wade Enterprises," Lee Goodman Investments, Inc., d/b/a Special Services Management will be referred to as "Lee Goodman Investments," and Lee Goodman, Jr. will be referred to as "Goodman."

2. The most hotly contested issue at trial was whether Page was terminated for reporting

abuse or for insubordination. However, because the cause of her termination is not an issue on appeal, we omit many of the details developed at trial regarding it.

3. Section 242.133 provides a cause of action against an institution, or an owner or employee of an institution, that terminates a person for reporting abuse or neglect of a resident of the institution. *See* TEX. HEALTH & SAFETY CODE ANN. § 242.133 (Vernon 1992).

damages, and (5) the trial court miscalculated the attorney fee.

## STANDARD OF REVIEW

In determining a "no-evidence" point, we are to consider all of the evidence in the light most favorable to the party in whose favor the verdict has been rendered, and to indulge every reasonable inference from the evidence in that party's favor. *See Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex.1998); *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law, and any challenges go merely to the weight to be accorded the evidence. *See Formosa Plastics Corp.,* 960 S.W.2d at 48; *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996).

An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *See Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination. *See Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex.1998).

## LIABILITY UNDER SECTION 242.133

■ To recover for wrongful retaliation under section 242.133, the plaintiff must prove that (1) the defendant is an institution,[4] or the owner or employee of an institution, (2) the defendant suspended or terminated the plaintiff's employment, or otherwise disciplined or discriminated against the plaintiff, (3) for reporting abuse or neglect of a resident to the plaintiff's supervisors, the department, or a law enforcement agency. *See*

TEX. HEALTH & SAFETY CODE ANN. § 242.133 (Vernon 1992).

In this case, the Appellants do not challenge the sufficiency of the evidence that they terminated Page for reporting the abuse of a resident. Rather, Appellants argue that there is no evidence that Goodman and Lee Goodman Investments were employees or owners of an institution and there is no evidence to show that Page was terminated or otherwise retaliated against by Goodman–Wade Enterprises.

Although Appellants assert different rationales in points four through six for avoiding liability, they contend that the same factual background supports their respective arguments. They concede that Page went to work for Goodman–Wade Enterprises in 1986 and this corporation was the owner of an "institution." But they assert that in March 1993, Page was promoted to state administrator and became an employee of Lee Goodman Investments, which was *not* an institution or the owner of an institution and thus not within the scope of section 242.133. Furthermore, they contend that Goodman was not the owner or employee of an institution and thus cannot be held liable under the statute. We address each of these contentions separately.

### 1. Goodman–Wade Enterprises

■ The record indicates that Page's letter of termination, signed by "Lee Goodman, CEO," was typed on Creative Living[5] letterhead. Moreover, when Page filed a claim for unemployment benefits with the Texas Employment Commission in July 1993, she named Creative Living as the organization for which she last worked, and Bob Upton, managing director of Lee Goodman Investments, signed the notice from the Texas Employment Commission on behalf of Creative Living. Because this constitutes some evidence that Goodman–Wade Enterprises terminated Page's employment, we overrule Appellants' fifth point.

---

4. An institution is an establishment that furnishes food and shelter to four or more persons who are unrelated to the proprietor of the establishment, and provides minor treatment under the care of a licensed doctor, or other services that meet some need beyond the basic provisions of

food, shelter, and laundry. *See* TEX. HEALTH & SAFETY CODE ANN. § 242.002(6)(A) (Vernon 1992).

5. Goodman–Wade Enterprises did business as Creative Living.

## 2. Goodman

██ In their sixth point, Appellants contend that Goodman cannot be liable for retaliatory discharge under section 242.133 because he was not an owner or employee of an institution. This contention is without merit. At trial, Goodman testified that he owned Goodman–Wade Enterprises, which Appellants now concede was an "institution." Moreover, Upton testified that Goodman "did all the talking" in the meeting where Page was fired and that Goodman was the one who ultimately fired Page. This is some evidence that Goodman was the owner of an institution and that he terminated Page's employment. Accordingly, we overrule Appellants' sixth point.

## 3. Lee Goodman Investments

██ In their fourth point, Appellants contend that Lee Goodman Investments cannot be liable for terminating Page because it was not the owner of an institution. We agree. The only evidence in the record about Lee Goodman Investments indicates that this corporation merely provided the management services to the homes owned by Goodman–Wade Enterprises. Because there is no evidence in the record that Lee Goodman Investments was an institution or the owner or employee of an institution, we sustain Appellants' fourth point.

## B. Statutory Exemption

██ In their third point, Appellants contend that even if the evidence was legally sufficient to hold them liable for retaliatory discharge, section 242.003 of the health and safety code exempts them from a cause of action brought under section 242.133.[6] However, under Rule 94 of the Texas Rules of Civil Procedure, parties must affirmatively plead any matter constituting a matter in avoidance or an affirmative defense. *See* TEX.R. CIV. P. 94. A matter in avoidance of statutory liability that is not affirmatively pleaded by the parties is waived. *See id.;*

*Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 518 (Tex.1988).

In this case, Appellants did not affirmatively plead the exemption under section 242.003, nor do we find any record reference in Appellants brief where this issue was tried by consent. Indeed, in their motion for judgment N.O.V., Appellants took a contrary position, arguing that none of them were an institution subject to the provisions of chapter 242. By failing to argue in the trial court that they were exempt under section 242.003, Appellants waived this defense and are precluded from raising it for the first time on appeal. *See Davis v. City of San Antonio,* 752 S.W.2d 518, 519 (Tex.1988); *Gilbert v. Smedley,* 612 S.W.2d 270, 275 (Tex.Civ. App.—Fort Worth 1981, writ ref'd n.r.e.). Accordingly, we overrule Appellants third point and turn to the issue of damages.

## III. ACTUAL DAMAGES

In points one and two, Appellants urge that the evidence is legally and factually insufficient to support the jury's award of $470,000 in actual damages. The trial court charge instructed the jury that in determining the amount of money necessary to compensate Page for damages resulting from Appellants' conduct, it should consider past lost wages, future lost wages, past mental anguish, and future mental anguish. The damage issue was submitted to the jury in broad form and requested a single award.

██ When the jury is given a broad-form damage submission and is not asked to specify the amount of damages for each element, it is possible that the jury could have awarded the entire amount on the basis of any of the elements of damages. *See K Mart Corp. v. Rhyne,* 932 S.W.2d 140, 144 (Tex.App.— Texarkana 1996, no writ). As a result, the only way for Appellants to successfully challenge a multi-element damages award on appeal is to "address each and every element and show that not a single element is supported by sufficient evidence." *Greater*

---

**6.** Section 242.003 provides that chapter 242 does not apply to a facility that is (1) operated under the jurisdiction of a state or federal agency, (2) certified through inspection or evaluation as meeting the standards established by the state or federal agency, (3) that primarily engages in the training, habilitation, rehabilitation, or education of clients or residents. *See* TEX. HEALTH & SAFETY CODE ANN. § 242.003(a)(6) (Vernon 1992).

*Houston Transp. Co. v. Zrubeck,* 850 S.W.2d 579, 589 (Tex.App.—Corpus Christi 1993, writ denied).

## A. Past Lost Wages

 The correct measure of damages for past lost wages is the amount of money the employee would have earned had she not been terminated, less the sum she did earn after termination. *See Burlington Coat Factory Warehouse v. Flores,* 951 S.W.2d 542, 547 (Tex.App.—El Paso 1997, no writ). The correct measure of future damages for retaliatory discharge is the sum of money that the employee would have earned in the future had she not been terminated, less the sum of money that she will actually earn in the future. *See Southwestern Elec. Power Co. v. Martin,* 844 S.W.2d 229, 235 (Tex.App.—Texarkana 1992, writ denied). A plaintiff is not required to prove the exact amount of future lost wages, but only facts from which the jury can determine the proper amount. *See McIver v. Gloria,* 140 Tex. 566, 169 S.W.2d 710, 712–13 (1943).

 In this case, Appellants contend the jury award for past and future lost wages was erroneous because Page cannot recover lost wages beyond the date that the Goodman homes were sold to Rescare. Appellants rely on *Ewald v. Wornick Family Foods Corporation,* a Corpus Christi summary judgment case decided adversely against an employee who sued for sexual harassment, retaliatory discharge, assault and battery, and intentional infliction of emotional distress. *See* 878 S.W.2d 653 (Tex. App.—Corpus Christi 1994, writ denied). The *Ewald* court determined that questions of fact existed on the issues of sexual harassment and assault and battery and thus reversed the trial court's summary judgment on those issues. *See id.* at 661–62. However, the court held that evidence that some of the defendant's former employees worked at his new business failed to raise an issue of fact regarding whether damages could be recovered beyond the date that the company went out of business. *See id.* at 661. The appellate court thus concluded that any damages for past and future lost wages should be

limited to the period of time before the employer's business ceased to exist. *See id.*

Page's case is distinguishable from the situation in *Ewald.* Unlike *Ewald,* the instant case involves a trial on the merits decided in favor of the employee. Second, irrespective of the fate of Goodman–Wade Enterprises, Goodman himself was a defendant and he is still "in business." Moreover, although it is true that Goodman–Wade Enterprises ceased to do business within 60 days of Page's termination, there is also evidence that a substantial number of employees of the Goodman corporations were hired on by Rescare.

Perhaps most importantly, there is evidence that Page's career in the entire mental health industry was harmed by the wrongful termination. Brooksie Parrott, a former co-worker of Page's, testified that she went to work for the company that took over the Goodman–Wade homes as an administrator of twelve group homes in the Palestine and Lufkin areas. Parrott testified that Page had contacted her about obtaining a job with the new company, but she did not consider Page for the job because of Page's history with the Goodman corporations. Parrott also said that she would not hire Page in the health care business. Goodman himself testified that the new owners made it "very, very clear to us that Ms. Page would not have had a job ... with the new company."

Because there was evidence that Page's ability to secure employment in the *entire* mental health field has been harmed by Appellants' actions, Page's case is clearly distinguishable from the situation in *Ewald.* Consequently, we hold that in recovering lost wages, Page is not restricted to that period of time before the Goodman homes were sold. With this issue settled, we turn to the sufficiency of the evidence to support the jury's actual damages verdict.

 At trial, Page introduced testimony from Dr. Floyd Durham, an economist, about the earnings that she lost as a result of her termination. Durham's calculations were based on Page's age, her estimated date of retirement, her education, her salary at time she was terminated ($45,600), her present salary as a social worker for the Texas Department of Criminal Justice ($23,532), her

fringe benefits from both jobs, and her earnings from limited private consulting work. Durham testified that he had originally prepared an analysis of Page's lost earnings with the expectation that her case would be tried on August 14, 1995. He had estimated that Page's past lost wages were $73,063, and her future lost wages were $162,989, for a total loss of $236,052. Because the case was not tried until almost one year later than he expected, and Page had earned more than she originally anticipated in private consulting in 1995 (approximately $14,000), Durham estimated that his figures for that year were understated by about $7,000.[7] However, Durham testified that he had updated his original analysis and had determined, based on the higher consulting fee but also taking into consideration a change in the interest rate, that his original estimation of $236,052 in total lost wages was actually about $10,000 too low. Durham thus concluded that Page had suffered $246,065 in past and future lost wages as a result of her termination.[8] Based on this testimony, we hold that there was legally and factually sufficient evidence to support a finding of past and future lost wages in the amount of $246,065.

### B. Mental Anguish

■ Appellants contend that even if the evidence was legally and factually sufficient to support a finding of some lost wages, it was not sufficient to support the entire amount of actual damages awarded by the jury and thus some of the damage award must have been supported by evidence of mental anguish. Appellants contend that there was no evidence to support a finding of mental anguish.

■ To recover for mental anguish, a plaintiff must offer "direct evidence of the nature, duration, or severity of [plaintiffs'] anguish, thus establishing a substantial disruption in the plaintiffs' daily routine." *Saenz v. Fidelity & Guaranty Insurance*

*Underwriters,* 925 S.W.2d 607, 614 (Tex. 1996). Absent such direct evidence, the plaintiff must show a "high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger." *Id.* Mental anguish includes a mental sensation of pain resulting from "such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair or public humiliation or a combination of any of these." *Flores,* 951 S.W.2d at 548. The amount of a mental anguish award must be supported by evidence that the sum is fair and reasonable compensation for the damage suffered. *See Saenz,* 925 S.W.2d at 614.

Page testified that as a result of the wrongful termination:

I had lots of problems, stomach problems. I did have to go to the doctor and I was under the care of the doctor for several months. I had to take medication, and I felt very humiliated and I was hurt. I was very hurt.

It is clear from this testimony that Page's "stomach problems" were the direct result of the emotional upheaval caused by Appellants' actions. Page also testified that she was "devastated" by the termination, that she felt betrayed by the way she had been treated by Appellants, and that she had never been treated as badly as when Appellants tape-recorded a meeting she conducted shortly before she was fired. In addition, Page testified about the derogatory things that Appellants said about her and her family after she was fired.[9]

■ The evidence also showed that Page's career in the mental health care industry meant more than just a "job" to her and that her reputation in that profession had been harmed by Appellants' wrongful termination. Moreover, Page explained to the jury that she cared a great deal about the residents and what happened to them, but that she was instructed not to "interfere"

---

**7.** Page testified that the 1995 consulting work was a "one-time" job and that she would no longer be able to supplement her income with consulting fees from that source.

**8.** Although Durham testified in terms of "loss of earning capacity" rather than "lost wages," Ap-

pellants concede that "it appears that [Durham's] report and the testimony is in fact based on lost wages as opposed to loss of earning capacity."

**9.** Goodman described Page's family as a "rat's nest" caused by "inbreeding."

with them or talk to them after she was fired. The jury could reasonably have concluded that Appellants acts caused Page to suffer a high degree of mental pain and distress, including public and private humiliation. As a result, we hold that the evidence was legally and factually sufficient to support a finding that Page suffered mental anguish as a result of Appellants acts. Further, we hold that an award of $223,935 (the amount of the jury's award not supported by past and future lost wages) was reasonable in light of the circumstances. We overrule Appellants first and second points.

## PUNITIVE DAMAGES

In their seventh point, Appellants contend that the trial court's amended judgment erroneously holds Appellants jointly and severally liable for $225,000, the total amount of exemplary damages awarded. In this case, the jury found Appellants liable for $75,000 each in punitive damages. Although the trial court's original judgment held the Appellants individually liable for $75,000 each in punitive damages, the amended judgment held them jointly and severally liable for the entire $225,000 award.

Because the trial court's judgment must conform to the jury's verdict, *see* TEX.R. CIV. P. 301, the trial court erred in holding Appellants jointly and severally liable for the total amount of punitive damages. Moreover, under Texas law, exemplary damages are not recoverable absent an award of actual damages or equitable relief. *See Nabours v. Longview Sav. and Loan Ass'n*, 700 S.W.2d 901, 904 (Tex.1985). Because there was no evidence to support the award of actual damages against Lee Goodman Investments, the trial court erred in awarding punitive damages against Lee Goodman Investments. We further hold that Goodman and Goodman–Wade Enterprises are each individually liable for only $75,000 in punitive damages. We sustain Appellants' seventh point.

## ATTORNEY'S FEES

Appellants contend in their eighth point that the trial court erred in calculating the award of attorney's fees. At trial, the parties stipulated that a forty percent contingency fee represented fair and reasonable attorney's fees, and that "the court could handle [the fees] as a matter of arithmetic." The trial court awarded Page $278,000 in attorney's fees, which represents forty percent of both the actual and punitive damage awards ($695,000). The trial court's judgment also held Appellants jointly and severally liable for the entire award of attorney's fees. Because Appellants are not jointly liable for the total amount of punitive damages awarded to Page, they contend that the trial court erred in calculating the award of attorney's fees based on the total amount of exemplary damages ($225,000), rather than on the $75,000 awarded against each of them individually. Appellants also allege that the trial court erred in holding each of them jointly and severally liable for the total amount of attorney's fees. We agree. The trial court should have held Goodman–Wade Enterprises and Goodman jointly and severally liable for attorney's fees based on the actual damages award and individually liable for attorney's fees based on the punitive damages awarded against each of them individually. Because there was no evidence to support the jury's findings of liability against Lee Goodman Investments, the trial court should not have held Lee Goodman Investments liable for any attorney's fees. We sustain point eight.

## CONCLUSION

1. We affirm the trial court's judgment against Goodman–Wade Enterprises and Goodman for $470,000 in actual damages, plus prejudgment interest and court costs. Goodman–Wade Enterprises and Goodman are jointly and severally liable to Page for these amounts.

2. We reverse the trial court's judgment against Lee Goodman Investments and render judgment that Page take nothing from Lee Goodman Investments.

3. We modify the trial court's judgment as to punitive damages. Page shall recover punitive damages of $75,000 from Goodman–Wade Enterprises and

$75,000 from Goodman, but Goodman–Wade Enterprises and Goodman are only individually liable for these damages.

4. We modify the trial court's judgment as to attorney's fees. Goodman–Wade Enterprises and Goodman are jointly and severally liable to Page for $188,000 in attorney's fees on the actual damages award ($470,000 × 40%). Goodman–Wade Enterprises and Goodman are each individually liable to Page for $30,000 in attorney's fees on the individual punitive damages awards ($75,000 each X 40%).

5. We affirm the damages and attorney's fee awards as modified and affirm the remainder of the trial court's judgment.