COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-343-CV
 
 
SHEAR 
CUTS, INC.                                                                APPELLANT
 
V.
 
KAY 
LITTLEJOHN                                                                     APPELLEE
 
 
------------
 
FROM 
THE 342ND DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
 
        In 
this employment discrimination case, Appellant Shear Cuts, Inc. appeals the 
trial court’s judgment and $107,123.50 award in favor of Appellee Kay 
Littlejohn.  We modify the trial court’s judgment to delete the award of 
punitive damages and otherwise affirm the trial court’s judgment.
Factual and 
Procedural Background
        Littlejohn 
is an African-American licensed cosmetologist who applied for a position at one 
of Shear Cuts’ fourteen hair salons located throughout the Dallas-Fort Worth 
metroplex in the Fall of 2001.  Although the parties disagree on the 
circumstances leading up to Littlejohn’s discrimination claim against Shear 
Cuts, they agree that Littlejohn interviewed for a position at Shear Cuts’ 
Arlington salon on October 9, 2001. They also agree that Elizabeth Martinez, an 
area supervisor for Shear Cuts, conducted the interview at the Arlington 
location.
        Shear 
Cuts claims that during the interview Martinez had two concerns regarding 
Littlejohn’s candidacy for employment.  First, Littlejohn presented 
Martinez with a customer list from her previous employer, and theft of a client 
list is a terminable offense at Shear Cuts. Second, Shear Cuts could only offer 
$10 per hour as a store manager, which would constitute a drop in pay for 
Littlejohn because she made $21,000 per year plus bonuses at her previous job.  
Martinez testified that she did not offer Littlejohn a job and instead told 
Littlejohn that she would call her.
        Littlejohn’s 
version of the interview is quite different. She claims that Martinez told her 
that managers could make at least $30,000 a year and that some were making 
$50,000.  According to Littlejohn, Martinez offered her a position and 
agreed upon $10 per hour plus 50% commission on sales over $1,000 per week, 
assuring her that she would make at least $30,000 her first year.
        The 
following day, Littlejohn went to the Arlington salon and began setting up her 
supplies at one of the stations.  Littlejohn claims that upon being told 
Appellee would manage the salon, one of the employees, Wendy Swift, stated, 
“Hell no . . . this can’t be.”  Swift them made phone calls to a 
coworker and to Martinez.  Littlejohn also claims that an Asian employee 
walked out, asking Wendy, “[W]hy [are] you talking to her like that . . . I 
don’t want to be here with this going on.”  Littlejohn testified that 
Martinez called her and fired her, explaining that the employees were concerned 
that they would lose their white clientele because blacks would be coming to the 
salon.
        Shear 
Cuts, on the other hand, claims that after Littlejohn unexpectedly appeared at 
the salon, the corporate office called Martinez.  As a result, Martinez 
called Littlejohn and informed her that there must have been a misunderstanding 
because Littlejohn was not hired.  Martinez testified that she asked 
Littlejohn to get her belongings and leave the premises.
        Littlejohn 
filed a complaint with the Equal Employment Opportunity Commission within a week 
of the incident and thereafter filed this claim in district court.  After a 
short trial encompassing the testimony of only three witnesses, the trial court, 
sitting without a jury, ruled in favor of Littlejohn and awarded her 
$107,123.50.[1]  The trial court made the 
following findings of fact and conclusions of law:
 
FINDINGS 
OF FACT
 
1.Plaintiff 
is a black female.
 
2.Plaintiff 
applied for and was qualified for the position of manager of the Lincoln Square 
Shear Cuts in Arlington, TX.
 
3.Plaintiff 
suffered an adverse employment action because of her race, black.
 
4.Clear 
and convincing evidence showed that the Defendant acted with malice or reckless 
indifference to the rights of the Plaintiff when it engaged in the 
discriminatory employment practice.

CONCLUSIONS 
OF LAW
 
1.The 
Defendant violated the Texas Commission on Human Rights Act and the Tex. Lab. 
Code, in that it discriminated against the Plaintiff because of her race, black.
 
Shear 
Cuts, in five points of error, appeals the trial court’s judgment in favor of 
Littlejohn.
Legal 
Sufficiency
        In 
its first two points of error, Shear Cuts challenges the legal sufficiency of 
the evidence to support the trial court’s judgment that Shear Cuts violated 
the Texas Commission on Human Rights Act (TCHRA) by discriminating against 
Littlejohn because of her race.  In determining a “no-evidence” point, 
we are to consider only the evidence and inferences that tend to support the 
finding and disregard all evidence and inferences to the contrary.  Bradford 
v. Vento, 48 S.W.3d 749, 754 (Tex. 2001); Cont’l Coffee Prods. Co. v. 
Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); In re King's Estate, 150 
Tex. 662, 244 S.W.2d 660, 661 (1951).  Anything more than a scintilla of 
evidence is legally sufficient to support the finding. Cazarez, 937 
S.W.2d at 450; Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex. 1996). More 
than a scintilla of evidence exists if the evidence furnishes some reasonable 
basis for differing conclusions by reasonable minds about the existence of a 
vital fact.  Rocor Int’l, Inc. v. Nat’l Union Fire Ins. Co., 77 
S.W.3d 253, 262 (Tex. 2002).
        A 
“no-evidence” point may only be sustained when the record discloses one of 
the following: (1) a complete absence of evidence of a vital fact; (2) the court 
is barred by rules of law or evidence from giving weight to the only evidence 
offered to prove a vital fact; (3) the evidence offered to prove a vital fact is 
no more than a mere scintilla of evidence; or (4) the evidence establishes 
conclusively the opposite of a vital fact. Uniroyal Goodrich Tire Co. v. 
Martinez, 977 S.W.2d 328, 334 (Tex. 1998) (citing Robert W. Calvert, "No 
Evidence" and "Insufficient Evidence" Points of Error, 
38 TEX. L. REV. 
361, 362-63 (1960)), cert. denied, 526 U.S. 1040 (1999).
        An 
assertion that the evidence is “insufficient” to support a fact finding 
means that the evidence supporting the finding is so weak or the evidence to the 
contrary is so overwhelming that the answer should be set aside and a new trial 
ordered.  Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965).  We 
are required to consider all of the evidence in the case in making this 
determination.  Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 
(Tex.), cert. denied, 525 U.S. 1017 (1998).
        In 
discrimination cases that have not been fully tried on the merits, we apply the 
burden-shifting analysis established by the United States Supreme Court.  Wal-Mart 
Stores, Inc. v. Canchola, 121 S.W.3d 735, 739 (Tex. 2003).  When a 
discrimination case has been fully tried on its merits, however, “[w]e need 
not parse the evidence into discrete segments corresponding to a prima facie 
case, an articulation of a legitimate, nondiscriminatory reason for the 
employer’s decision, and a showing of pretext.” Rutherford v. Harris 
County, Tex., 197 F.3d 173, 181 (5th Cir. 1999) (quoting Travis v. Bd. of 
Regents, 122 F.3d 259, 263 (5th Cir. 1997)).  We instead, determine 
whether the evidence is sufficient to support the fact finder’s ultimate 
findings. Rutherford, 197 F.3d at 180-81; Canchola, 121 S.W.3d at 
739.
        Under 
section 21.051 of the TCHRA,
 
An 
employer commits an unlawful employment practice if because of race, color, 
disability, religion, sex, national origin, or age the employer:
 
(1) 
fails or refuses to hire an individual, discharges an individual, or 
discriminates in any other manner against an individual in connection with 
compensation or the terms, conditions, or privileges of employment.

Tex. Lab. Code Ann. § 21.051(1) (Vernon 
1996).  The Texas Legislature modeled chapter 21 of the Texas Labor Code 
after federal law for the express purpose of carrying out the policies of Title 
VII of the Civil Rights Act of 1964 and its subsequent amendments.  Id. 
§ 21.001(1); see Soto v. El Paso Natural Gas Co., 942 S.W.2d 671, 677 
(Tex. App.—El Paso 1997, writ denied); Ewald v. Wornick Family Foods Corp., 
878 S.W.2d 653, 658 (Tex. App.—Corpus Christi 1994, writ denied).  
Consequently, when reviewing an issue brought under chapter 21, we may look not 
only to cases involving the state statute, but also to cases interpreting the 
analogous federal provisions.  See Caballero v. Cent. Power & Light 
Co., 858 S.W.2d 359, 361 (Tex. 1993); Elgaghil v. Tarrant County Junior 
Coll., 45 S.W.3d 133, 139 (Tex. App.—Fort Worth 2000, pet. denied).
        In 
discrimination cases brought under the TCHRA, a prima facie case of 
discrimination is made by showing plaintiff (1) is within a protected group, (2) 
was adversely affected or suffered an adverse employment action, and (3) 
similarly situated non-protected class members were not treated similarly. See 
Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510, 122 S. Ct. 992, 996 (2002); McDonnell 
Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973); M.D. 
Anderson Hosp. v. Willrich, 28 S.W.3d 22, 24 (Tex. 2000).  In order to 
prove causation, plaintiffs must establish that race “was a motivating factor 
for an employment practice, even if other factors also motivated the practice, 
unless race . . . is combined with objective job-related factors to attain 
diversity in the employer’s work force.”  Tex. Lab. Code Ann. § 21.125(a) (Vernon 
Supp. 2004); Quantum Chem. Corp. v. Toennies, 47 S.W.3d 473, 479-80 (Tex. 
2001).
        Because 
Shear Cuts contends that it never hired Littlejohn, it recites a different list 
of elements required for establishing a prima facie case.  Shear Cuts 
asserts that in order to establish a prima facie case of discrimination in the 
context of a denial of an employment position, a claimant must show that (1) she 
is a member of a protected class, (2) she applied for and was qualified for the 
position, (3) despite her qualifications, she was rejected, and (4) after she 
was rejected, the position remained open and the employer continued to seek 
applicants with the claimant’s qualifications.  See Romo v. 
Tex. Dep’t of Transp., 48 S.W.3d 265, 270 (Tex. App.—San Antonio 2001, 
no pet.).  Littlejohn, however, does not contend that she was denied an 
employment position, she claims she was wrongfully terminated.  
Consequently, Littlejohn’s burden is to establish the elements of her 
claim.  Logically, if Shear Cuts did not hire Littlejohn, her claim fails 
as a matter of law.  On the other hand, if Shear Cuts did hire Littlejohn, 
she was not required to prove that she was qualified for the job or that she was 
rejected for the position or that Shear Cuts continued to seek applicants with 
the same qualifications.
        A 
review of the record demonstrates that the trial judge determined that Shear 
Cuts did hire, and subsequently fire, Littlejohn.[2]  
Thus, in order to properly address Shear Cuts’ contention on appeal, we must 
first decide whether the evidence supports the trial court’s determination 
that Shear Cuts hired Littlejohn.  The only fact witnesses at the trial 
were Littlejohn and Shear Cuts’ area supervisor, Martinez. Littlejohn 
testified that Martinez hired her, had her sign a W-2 form, and told her to 
report for work at 11:00 a.m. the following day.  Martinez testified that 
after interviewing Littlejohn for the position, Martinez told Littlejohn she 
would call her regarding the hiring decision.  Except for pictures of 
Littlejohn’s supplies set up in one of Shear Cuts’ styling stations, there 
is no other evidence regarding whether Shear Cuts hired Littlejohn.  While 
Shear Cuts points out that no documentary evidence was produced to indicate that 
Littlejohn completed any employment forms such as a W-4 or an I-9, we note that 
Martinez also testified that she disposed of Littlejohn’s application for 
employment.
        In 
a bench trial, the trial court, as fact finder, is the sole judge of the 
credibility of the witnesses.  Munters Corp. v. Swissco-Young Indus., 
Inc., 100 S.W.3d 292, 296 (Tex. App.—Houston [1st Dist.] 2002, pet. 
dism'd) (op. on reh’g).  The trial court may take into account all the 
surrounding facts and circumstances in connection with the testimony of each 
witness and accept or reject all or any part of that testimony.  Id. 
at 297.  Here, the trial court, as fact finder, was free to disagree with 
Shear Cuts' characterization of the evidence and to conclude that Littlejohn was 
hired as a manager for its Arlington salon and later terminated by Martinez. 
Giving due deference to the trial court’s findings on matters of weight and 
credibility, we cannot say that the evidence was so weak as to be clearly wrong.  
We therefore conclude that the trial court’s determination that Shear Cuts 
hired and then fired Littlejohn is supported by the evidence. Consequently, to 
establish a prima facie case of discrimination under the TCHRA, Littlejohn was 
required to show that she was (1) within a protected group, (2) suffered an 
adverse employment action, and (3) similarly situated non-protected class 
members were not treated similarly.  Swierkiewicz, 534 U.S. at 510, 
122 S. Ct. at 996.  Accordingly, we review the record to determine whether 
there is sufficient evidence that Shear Cuts terminated Littlejohn because she 
is African-American.
        Because 
the record contains little proof beyond the testimony of Littlejohn and 
Martinez, the evidence before us is essentially a swearing match between the two 
parties.  We will not reevaluate the weight and credibility of the evidence 
and therefore defer to the trial court’s role as the exclusive judge of the 
credibility of the witnesses.  See Munters Corp., 100 S.W.3d at 296.  
Keeping this in mind, we find the evidence to be legally sufficient to sustain 
the trial court’s ultimate determination that Shear Cuts “discriminated 
against [Littlejohn] because of her race, black.”  We overrule Shear 
Cuts’ first two points.
Damages
        In 
its third point, Shear Cuts contends that the evidence is legally insufficient 
to support the award of $40,911 for lost wages from October 12, 2001 until the 
time of trial, September 10, 2003.  The trial court has discretion to award 
back pay as equitable relief in a race discrimination lawsuit. Tex. Lab. Code Ann. § 21.258(b)(1) 
(Vernon 1996).  The correct measure of damages for lost wages is the amount 
of money the employee would have earned had she not been terminated, less the 
sum she did earn after termination.  Id. § 21.258(c); Goodman v. 
Page, 984 S.W.2d 299, 305 (Tex. App.—Fort Worth 1998, pet. denied).
        Shear 
Cuts, relying on Ewald v. Wornick Family Foods Corp., claims that 
Littlejohn cannot recover lost wages beyond November 2001—the date that the 
Arlington Shear Cuts was sold to another party.  878 S.W.2d 653 (Tex. 
App.—Corpus Christi 1994, writ denied). Ewald was a Corpus Christi 
summary judgment case decided adversely against an employee who sued for sexual 
harassment, retaliatory discharge, assault and battery, and intentional 
infliction of emotional distress.  Id at 655.  In that case, 
the court held that an employee could not recover compensatory damages for the 
period of time following the closure of the employer's plant. Id. at 661.
        Shear 
Cuts’ case, however, is distinguishable from the situation in Ewald. 
Unlike Ewald, the instant case involves a trial on the merits decided in 
favor of the employee.  Second, the record shows that in an attempt to 
resolve Littlejohn’s claim, Shear Cuts offered her a position in another 
store.  Thus, Shear Cuts failed to establish that Littlejohn would have 
been terminated, rather than transferred to another location, when the Arlington 
store was sold.  We hold that in recovering lost wages, Littlejohn is not 
restricted to that period of time before the Arlington store was sold.  See 
Haggar Apparel Co. v. Leal, 100 S.W.3d 303, 313 (Tex. App.—Corpus Christi 
2002, pet. filed); Goodman, 984 S.W.2d at 305.  Therefore, the 
evidence was legally sufficient to support the trial court’s award for lost 
wages.  We overrule Shear Cuts’ third point.
        In 
Shear Cuts’ fourth and fifth points, it challenges the legal sufficiency of 
the trial court’s $50,000 punitive damages award.  Although section 
21.2585(b) of the Texas Labor Code permits a court to award punitive damages, 
the employee must show that the employer engaged in a discriminatory practice 
with malice or with reckless indifference to the rights of an aggrieved 
individual. Tex. Lab. Code Ann. § 21.2585(b) 
(Vernon Supp. 2004).  Malice has to be proved by clear and convincing 
evidence—the “measure or degree of proof that will produce in the mind of 
the trier of fact a firm belief or conviction as to the truth of the allegations 
sought to be established.”  See Tex. Civ. Prac. & Rem. Code Ann. 
§§ 41.001(2), 41.003(a)(2), (b) (Vernon Supp. 2004).  The terms 
“malice” and “reckless indifference” pertain to the employer’s 
subjective knowledge that it may be acting in violation of the law, not its 
awareness that it is engaging in discrimination.  Kolstad v. Am. Dental 
Ass’n, 527 U.S. 526, 535, 119 S. Ct. 2118, 2124 (1999).  The Texas 
Labor Code further limits the amount of punitive damages according to the 
employer’s number of employees.  See Tex. Lab. Code Ann. § 21.2585(d).  
For example, punitive damages assessed against an employer with fewer than one 
hundred one employees may not exceed $50,000.  Id. § 21.2585(d)(1).
        The 
United States Supreme Court recently considered procedural and substantive 
constitutional limitations on a state’s right to allow punitive damages in State 
Farm Mutual Automobile Insurance Co. v. Campbell.  538 U.S. 408, 123 S. 
Ct 1513 (2003).  In that case, the Supreme Court reinforced the three 
guideposts it established in BMW of North America, Inc. v. Gore for 
determining whether punitive damages are proper: 1) the degree of 
reprehensibility of the misconduct; 2) the disparity between the actual or 
potential harm suffered by the plaintiff and the punitive damages award; and 3) 
the difference between the punitive damages award and the civil penalties 
authorized or imposed in comparable cases. Id. at 419, 123 S. Ct. at 
1520; BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 574-75, 116 S. Ct. 1589, 
1598-99 (1996).
        “[T]he 
most important indicium of the reasonableness of a punitive damages award is the 
degree of reprehensibility of the defendant’s conduct.”  Campbell, 
538 U.S. at 419, 123 S. Ct. at 1521 (quoting Gore, 517 U.S. at 575, 116 
S. Ct. at 1599).  In determining reprehensibility, we consider 1) whether 
the harm caused was physical as opposed to economic, 2) whether conduct 
indicates an indifference to or a reckless disregard for the health or safety of 
others, 3) whether the target of the conduct had financial vulnerability, 4) 
whether the conduct involved repeated actions or was an isolated incident, and 
5) whether the harm was the result of intentional malice, trickery, deceit, or 
mere accident.  Id. at 419, 123 S. Ct. at 1521.
 
The 
existence of any one of these factors weighing in favor of a plaintiff may not 
be sufficient to sustain a punitive damages award; and the absence of all of 
them renders any award suspect.  It should be presumed a plaintiff has been 
made whole for his injuries by compensatory damages, so punitive damages should 
only be awarded if the defendant’s culpability, after having paid compensatory 
damages, is so reprehensible as to warrant the imposition of further sanctions 
to achieve punishment or deterrence.
 
Id.
        After 
reviewing the sparse evidentiary record in light of the Supreme Court’s five 
reprehensibility factors, we conclude that the evidence is insufficient to 
justify the imposition of punitive damages. First, despite Littlejohn’s claim 
of emotional distress, she testified that she did not see any doctors or 
therapists for mental or physical injuries, indicating that most, if not all, of 
Littlejohn’s damages were economic.  Second, Shear Cuts’ misconduct did 
not constitute a reckless disregard for the health or safety of others. Third, 
due to the extremely short duration of her employment, Littlejohn was no more 
financially vulnerable than she would have been had she not been hired by Shear 
Cuts.  There was no evidence that Littlejohn quit or refused another job 
opportunity in reliance on her expected employment. In fact, Littlejohn 
testified that she voluntarily left her prior job with Fantastic Sams and was 
unemployed when she submitted her application for employment with Shear Cuts.
        Fourth, 
and perhaps most instructive on the degree of reprehensibility, is a total lack 
of evidence indicating that this was anything other than an isolated event.  
Martinez testified that the three previous managers at the Arlington salon were 
African-American women and that Shear Cuts consistently employs minorities at 
all of its locations.  Furthermore, Littlejohn testified that she knew an 
African-American woman who previously worked at the Arlington salon for a long 
period of time.
        Finally, 
Littlejohn’s own testimony fails to establish that Shear Cuts acted with 
intentional malice under the Supreme Court’s reprehensibility factors or 
“engaged in a discriminatory practice with malice or with reckless 
indifference to the state-protected rights of an aggrieved individual” as 
required by section 21.2585 of the Texas Labor Code:
 
She 
[Martinez] said, I have bad news for you.  And I said, I haven’t been 
here long enough to do anything wrong.  What’s the problem?  She 
said, Well, I’m going to have to let you go.  I said, What did I do?  
She said, It’s nothing that you did.  And she was being very nice.  
She said, It’s nothing that you did.  She said, I’m sorry.  I’m 
just going to have to let you go.  The girls are very concerned about the 
fact that you’re going to be doing black hair. . . . And they’re concerned 
about that and they’re going to walk out on me.  And I said, Well, look, 
I don’t understand.  I said, Why?  I said -- I said, She didn’t 
have a problem with me when I walk in.  I said -- but she said, Well, I’m 
sorry.  She said, What else do you want me to do?  Would you rather me 
have you on and lose my employees and my clients? I don’t have a choice.  
I’m stuck.  I said, This is not fair, you can’t do this.  And she 
said, Well, I’m sorry.

Because 
the trial court’s award of punitive damages is not supported by clear and 
convincing evidence of malice, we sustain Shear Cuts’ fourth and fifth points.  
See Tex. Civ. Prac. & Rem. 
Code Ann. § 41.003(b) (Vernon Supp. 2004).
Conclusion
        We 
modify the trial court’s judgment to delete the $50,000 award of punitive 
damages.  We affirm the trial court's judgment as modified.
 
 
                                                          DIXON 
W. HOLMAN
                                                          JUSTICE
 
 
PANEL 
B:   DAUPHINOT, HOLMAN, and GARDNER, JJ.
 
DELIVERED: 
July 8, 2004

 
NOTES
1.  
The total damage award is composed of $40,911 in lost wages, $50,000 for 
punitive damages, $8,712.50 in attorneys’ fees, and $7,500 for appeals.
2.  
Although the trial court’s findings of fact and conclusions of law resemble 
the prima facie elements advanced by Shear Cuts, just before finding in favor of 
Littlejohn, the trial court stated, “It makes more sense to me that the 
plaintiff was hired.”