TDCJ v. King
















IN THE
TENTH COURT OF APPEALS
 

No. 10-01-058-CV

     TEXAS DEPARTMENT OF 
     CRIMINAL JUSTICE,
                                                                              Appellant
     v.

     PATRICIA KING,
                                                                              Appellee
 

From the 87th District Court
Freestone County, Texas
Trial Court # 99-064-B
                                                                                                                

MEMORANDUM OPINION
                                                                                                                

      Patricia King was the first woman officer to work in the field at the Boyd Unit for the Texas
Department of Criminal Justice. In the field, the officers rode horses and supervised crews of
inmates working outside. Lt. Robert Lummus did not want women officers in the field.
      After enduring many months of what she perceived to be sexual harassment, King filed a
complaint with TDCJ’s equal employment opportunity office. She was not satisfied with the
results of her complaint and sued TDCJ in district court.
      A jury found King had been sexually harassed and awarded her $250,000 in compensatory
damages. TDCJ appealed. We affirm the judgment.
Insufficiency of the Evidence
      In its first and second issues, TDCJ argues that the evidence was both legally and factually
insufficient to show King was entitled to mental anguish damages and that the amount awarded by
the jury for mental anguish damages was reasonable.
      The trial court submitted a broad form damage question on compensatory damages, instructing
the jury to consider six elements of damage but asking for just one total amount. The jury
awarded King $250,000 in compensatory damages. TDCJ did not object to the broad-form
submission of the question.
      TDCJ did, however, voice an objection to the charge as follows:
Defendants have a sole objection, Your Honor, to the interrogatory on damages. It’s
our position that there is no evidence to support an award of other than nominal damages
for compensatory damages; that the plaintiff’s proof does not rise to the level required
to gain compensatory damages for mental anguish....

It is unclear from the objection whether TDCJ is simply making a global objection to the damages
question or whether TDCJ is making a more specific objection that a particular element of damage
had no support in the evidence and should not be included in the broad form question such as was
the case in Harris County v. Smith. See Harris County v. Smith, 96 S.W.3d 230 (Tex. 2002); see
also Casteel v. Crown Life Ins. Co., 22 S.W.3d 378 (Tex. 2000). TDCJ does not contend on
appeal that the submission of the question was erroneous. In fact, cases on the erroneous
submission of a question were not cited in any of TDCJ’s briefs. We looked to the motion for
judgment notwithstanding the verdict, the motion for new trial, the brief, and the reply brief and
have determined that TDCJ never intended to and does not now raise a Harris County/Casteel
complaint.
      TDCJ only complains that the evidence is insufficient to support an award of damages based
on mental anguish. It did not ask for separate damage findings. When a party does not ask for
separate damage findings and fails to address each element of damages, a sufficiency of the
evidence challenge is waived. See Thomas v. Oldham, 895 S.W.2d 352, 360 (Tex. 1995); Price
v. Short, 931 S.W.2d 677, 688 (Tex. App.—Dallas 1996, no writ); Greater Houston Transp. Co.
v. Zrubeck, 850 S.W.2d 579, 589 (Tex. App.—Corpus Christi 1993, writ denied). See also
Harris County v. Smith, 96 S.W.3d 230, 232 (Tex. 2002). Although TDCJ claims in a footnote
that its argument covers all the elements of the damages question, it does not. TDCJ’s case
authority and argument focuses solely on the mental anguish element of the question and does not
address the other five elements identified in the special question to the jury. Because TDCJ does
not attack each element, its sufficiency challenges are waived. Issues one and two are overruled.
Affirmative Defense
      TDCJ also takes issue with the jury’s negative finding on Question 2 regarding an affirmative
defense to King’s claim. It contends that the affirmative defense was conclusively proven as a
matter of law, or, alternatively, the jury’s finding of “no” was against the great weight and
preponderance of the evidence. TDCJ does not dispute that it had the burden of proof on the
affirmative defense.
Standard of Review
      When the party that had the burden of proof at trial complains of legal insufficiency of an
adverse finding, that party must demonstrate that the evidence establishes conclusively, i.e., as
a matter of law, all vital facts in support of the finding sought. Dow Chem. Co. v. Francis, 46
S.W.3d 237, 241 (Tex. 2001); Hatch v. Williams, 110 S.W.3d 516, 522 (Tex. App.—Waco 2003,
no pet.). We first examine the record for evidence supporting the adverse finding, ignoring all
evidence to the contrary. Dow Chem. Co., 46 S.W.3d at 241. If more than a scintilla of evidence
supports the adverse finding, our inquiry ends. Hatch, 110 S.W.2d at 522. "More than a scintilla
of evidence exists where the evidence supporting the finding, as a whole, rises to a level that
would enable reasonable and fair-minded people to differ in their conclusions." Burroughs
Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); Hatch, 110 S.W.2d at 522.
      When the party complaining of the factual sufficiency of the evidence had the burden of proof
at trial, it must demonstrate that the adverse finding is contrary to the great weight and
preponderance of the evidence. Dow Chemical Co., 46 S.W.3d at 242; Hatch, 110 S.W.2d at
522. We weigh all the evidence, and we can set aside the adverse finding only if it is so against
the great weight and preponderance of the evidence that it is clearly wrong and unjust. Dow
Chemical Co., 46 S.W.3d at 242. In doing so, we must detail the evidence and state in what
regard the contrary evidence greatly outweighs the evidence in support of the adverse finding. Id.
Defense to Liability or Damages
      When harassment does not result in a tangible employment action, such as discharge,
demotion, or undesirable reassignment, the employer may assert an affirmative defense to liability
or damages. Burlington Indus. v. Ellerth, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633
(1998); Faragher v. City of Boca Raton, 524 U.S. 775, 807-808, 118 S.Ct. 2275, 141 L.Ed.2d
662 (1998). King does not contend that she suffered a tangible employment action. There are two
necessary elements to the affirmative defense: (1) the employer exercised reasonable care to
prevent and correct promptly any sexually harassing behavior; and (2) the employee unreasonably
failed to take advantage of any preventive or corrective opportunities provided by the employer
or to avoid harm otherwise. Ellerth, 524 U.S. at 765; Faragher, 524 U.S. at 807. The defense
is not established if both elements are not met.
      Prevention
      While proof of an anti-harassment policy is not always necessary as a matter of law, the need
for a suitable policy may be addressed when litigating the first element of the affirmative defense. 
See Ellerth, 524 U.S. at 765; Faragher, 524 U.S. at 807. It is undisputed that TDCJ had an anti-harassment policy. It is also undisputed that King availed herself to that policy.
Prompt Correction of Behavior
      Whether an employer's action in response to a sexual harassment claim is sufficient
necessarily depends on the particular facts of the case--the severity and persistence of the
harassment, and the effectiveness of initial remedial steps. Dillard Dep't Stores, Inc. v. Gonzales,
72 S.W.3d 398, 410 (Tex. App.—El Paso 2002, pet. denied); Wal-Mart Stores v. Davis, 979
S.W.2d 30, 37 (Tex. App.—Austin 1998, pet. denied). Even where the employer takes some
remedial steps, it may still be liable if its actions were not reasonably calculated to stop the
harassment. Dillard, 72 S.W.3d at 410; Davis, 979 S.W.2d at 37.
      The Department does not contest the jury’s finding that sexual harassment occurred. King
called TDCJ’s Equal Employment Opportunity office on October 3, 1997. She signed a complaint
three days later. Over a month after King filed her complaint, an investigator from the EEO set
up appointments to interview King and some of the other officers. TDCJ took no immediate
action to separate Lummus from King. He remained her supervisor for three months. Lummus
continued to discuss his own sex life with King.
      Nothing more with King’s complaint occurred until January of 1998 when King was assigned
to work the building. In March, the EEO found that (1) there was evidence to support the
allegation that Lummus made the comment after a funeral that he wanted to “reach out and pat that
ass;” (2) there was evidence to support the allegation that Lummus wanted to measure King’s
inseam; (3) there was evidence to support the allegation that Lummus made comments to King
insinuating that King was having sexual affairs with other officers and a sergeant; (4) Lummus
behaved in a crude and unprofessional manner in King’s presence by opening his pants to tuck in
his shirt; and (5) Lummus engaged in inappropriate conduct when he made thrusting movements
toward King’s buttocks and deliberately bumped another officer’s hand in an effort to force it to
make contact with King’s buttocks. When Warden Terry received the EEO’s findings, he moved
King back into the field where she reported to Sgt. Luke. Lummus was not to be King’s field
supervisor, but according to King, Lummus continued to be her lieutenant.
      Terry did not like the EEO’s findings. He sent a four and a half page letter to Jim Shaw, the
regional director, detailing his complaints with the findings. Shaw told Terry to continue with the
disciplinary action against Lummus and to use what the EEO sent. Of the five findings made by
the EEO, Terry found only two instances of sexual harassment were substantiated: (1) “tucking
in shirt tail in front of someone of the opposite gender;” and (2) “talking about the buttock of
someone of the opposite gender.” After reading the report by the EEO, Terry did not see
sufficient evidence to support the inseam incident, the pelvic thrust incident, or the idea that
Lummus did not want women in the field. After an employee hearing, Terry gave Lummus nine
months probation, beginning the day of the hearing, and suspended him for two days without pay,
beginning one week later. However, according to policy, if Terry was going to suspend Lummus
at all, it was to be for at least a full week. Terry admitted he did not suspend Lummus for a full
week as required by the policy but testified that it was because he misread the policy guidelines
applicable to Lummus.
      According to King, the harassment did not stop. King felt harassed after she was moved back
into the field when Lummus and other officers discussed their sex lives, knowing King was in
close proximity to where the conversations were taking place.
      In a memo to the file, another investigator reviewed King’s complaint at the end of April. 
This investigator determined that the incidents alleged by King did not rise to the level of sexual
harassment, even with corroboration of two incidents by witnesses.
Application
      TDCJ did nothing to separate King and Lummus for the first three months of the
investigation. The warden did not like and disregarded several of the EEO’s findings that he
found insufficiently proved. He punished Lummus below policy guidelines. Another investigator
decided no sexual harassment occurred. The harassing behavior toward King continued after she
resumed her position in the field.
      After examining the record for evidence that supports the jury’s finding, we hold there is
more than a scintilla of evidence that TDCJ did not exercise reasonable care to prevent and
promptly correct sexually harassing behavior by Lummus. Considering and weighing all the
evidence, the finding by the jury is not so against the great weight and preponderance of the
evidence as to be clearly wrong and unjust.
      Because TDCJ did not establish the first element of the defense as a matter of law or as
against the great weight and preponderance of the evidence, we need not discuss whether King
unreasonably failed to take advantage of any preventative or corrective opportunities provided by
TDCJ or to avoid harm otherwise. TDCJ’s third issue is overruled.
Prejudgment Interest
      For the first time on appeal, TDCJ contends the trial court erred in awarding prejudgment
interest because the Texas Commission on Human Rights Act does not waive immunity for
prejudgment interest. 
      Immunity from suit and immunity from liability are two distinct principles. Texas Dep’t of
Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999). There is no question that the TCHRA waives
TDCJ’s immunity from suit. The issue becomes, then, whether TDCJ is immune from liability
for prejudgment interest under the Act. Immunity from liability, like other affirmative defenses
to liability, must be pled or it is waived. Kinnear v. Texas Comm’n on Human Rights, 14 S.W.3d
299, 300 (Tex. 2000); Davis v. City of San Antonio, 752 S.W.2d 518, 519 (Tex. 1988).
      King requested prejudgment interest in her original petition. TDCJ never pled sovereign
immunity from liability as an affirmative defense to the requested interest. Thus, it waived the
defense, and issue four is overruled.
Attorney’s Fees
      In its eighth issue, TDCJ argues that the trial court erred in awarding attorney’s fees on
King’s retaliation claim. King initially sued TDCJ for sexual harassment and retaliation. It is
undisputed that by the end of the trial, King dropped the retaliation claim, and only the sexual
harassment claim was submitted to the jury.
      However, at the beginning of trial, King and TDCJ entered into a stipulation that if King
prevailed in her lawsuit, the issue of attorney’s fees would be submitted to the trial court by
affidavit. King prevailed. As an exhibit to a motion for judgment, King’s attorney submitted an
affidavit requesting attorney’s fees in the amount of $54,262.50 at the rate of $150 per hour for
361.75 hours. In its response to King’s motion for judgment, TDCJ specifically addressed the
issue of attorney’s fees, stating:
Defendant does not controvert plaintiff’s calculation of attorneys’ fees. Plaintiff’s
attorneys’ fee rate of $150 per hour is reasonable. The calculation of 361.75 hours for
the attorneys’ time throughout trial for the entire case is also reasonable. Therefore,
Defendant will file no affidavit controverting this “lodestar” request.

TDCJ had no objection to King’s attorneys’s fee rate or calculation of the number of hours for the
entire case. It cannot now complain that the trial court erred in using uncontested factors to
calculate attorney’s fees. TDCJ has not preserved this issue. See Tex. R. App. P. 33.1. Issue
eight is overruled.
Inadequate Briefing
      In its fifth issue, TDCJ contends the trial court erred in excluding testimony of a defense
witness to rebut King’s claim that Lummus was biased against women subordinates. Specifically,
TDCJ wanted this witness to be able to testify that Lummus had never harassed or discriminated
against her and had treated her professionally. This witness was allowed only to testify that
Lummus had never told her that he did not want women in the field.
      TDCJ presents no authority in its brief or reply brief to support its position that the trial court
erred in sustaining King’s objection to the testimony. See Tex. R. App. P. 38.1(h). Thus, this
issue is inadequately briefed and presents nothing for review. See Fox v. Parker, 98 S.W.3d 713,
728 (Tex. App.—Waco 2003, pet. denied). TDCJ’s fifth issue is overruled.
      In its sixth issue, TDCJ argues the trial court erred in overruling its objection to King’s
allegedly improper jury argument. As with its fifth issue, TDCJ presents no authority in its brief
or reply brief to support its position that the trial court erred. See Tex. R. App. P. 38.1(h). Thus,
this issue is inadequately briefed and presents nothing for review. See Fox v. Parker, 98 S.W.3d
713, 728 (Tex. App.—Waco 2003, pet. denied). TDCJ’s sixth issue is overruled.
      In its seventh issue, TDCJ contends that King failed to prove an entitlement to back pay. 
Specifically, TDCJ argues that sick leave is not back pay. However, TDCJ provides no authority
to support its position that sick leave is not back pay. See Tex. R. App. P. 38.1(h). Thus, this
issue is inadequately briefed and presents nothing for review. See Fox v. Parker, 98 S.W.3d 713,
728 (Tex. App.—Waco 2003, pet. denied). TDCJ’s seventh issue is overruled.
      In its ninth issue, TDCJ contends the jury’s award of $250,785 in damages is manifestly
unjust and excessive. Again, TDCJ presents no argument or authority to support its position that
the award is manifestly unjust and excessive. See Tex. R. App. P. 38.1(h). Thus, this issue is
inadequately briefed and presents nothing for review. See Fox v. Parker, 98 S.W.3d 713, 728
(Tex. App.—Waco 2003, pet. denied). TDCJ’s ninth issue is overruled.
Conclusion
      Having overruled each of TDCJ’s issues on appeal, the trial court’s judgment is affirmed.
 
                                                                   TOM GRAY
                                                                   Chief Justice

Before Chief Justice Gray, and
      Justice Vance
(Former Chief Justice Davis not participating)



Affirmed
Opinion delivered and filed December 10, 2003
[CV06]